UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BRENDA THOMPSON, CARL SPARACI,
MILDRED HERNANDEZ, VICTORIA
GUERRERO, FATOUMATA THIAM,
DAVID ROMERO, and KWAWDO POKU,

                       Plaintiffs,

          -against-                            No. 13 CIV 2988 (CS) (LMS)

                                          ECF Case
SHAUN DONOVAN, in his official capacity as
Secretary of the United States Department of
Housing and Urban Development and the UNITED
STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT; and DARRYL C.
TOWNS, in his official capacity as Commissioner/
CEO of New York State Homes & Community
Renewal,

                      Defendants.
--------------------------------------------------------x

## DEFENDANT DARRYL C. TOWNS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Defendants
120 Broadway
New York, New York 10271
(212) 416-8651

MICHAEL A. BERG
Assistant Attorney General

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................. 2

ARGUMENT.............................................................................................................. 9

I.  THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFFS' CLAIMS .......... 9

    A.  District Courts Lack Jurisdiction To Review State-Court Decisions .............. 9

    B.  *Rooker-Feldman* Bars Relitigation of Landlord-Tenant Cases...................... 11

    C.  *Rooker-Feldman* Bars Plaintiffs' Claims Against Commissioner Towns ..................... 13

        1.  Thompson, Guerrero, and Romero .......................................................... 13

        2.  Hernandez, Sparaci, Thiam, and Poku..................................................... 14

II.  THOMPSON'S CLAIMS ARE NOT JUSTICIABLE ........................................ 16

III.  *RES JUDICATA* AND COLLATERAL ESTOPPEL BAR PLAINTIFFS' CLAIMS......... 18

    A.  *Res Judicata* Precludes Plaintiffs' Claim Against Commissioner Towns...................... 18

    B.  Collateral Estoppel Precludes Plaintiffs' Claim Against Commissioner Towns ........... 21

IV.  THE COURT MUST ABSTAIN TO THE EXTENT THAT PLAINTIFFS ARE STILL LITIGATING LANDLORD-TENANT DISPUTES IN STATE COURT.............. 21

V.  PLAINTIFFS' CLAIM IS SUBJECT TO DISMISSAL ON THE MERITS ........................ 24

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Acosta-Pelle v. New Century Fin. Servs., Inc.*,
  No. 09 Civ. 2631, 2009 U.S. Dist. LEXIS 118701 (S.D.N.Y. Dec. 17, 2009)........................18

*Algonquin Power Income Fund v. Christine Falls of New York*,
  362 Fed. Appx. 151 (2d Cir. 2010)........................................................................................19

*Allen v. McCurry*,
  449 U.S. 90 (1980)................................................................................................................18

*Allianz Ins. Co. v. Cavagnuolo*,
  No. 03 Civ. 1636 (HB), 2004 U.S. Dist. LEXIS 8186 (S.D.N.Y. May 6, 2004).....................10

*Allianz Ins. Co. v. Lerner*,
  296 F. Supp. 2d 417 (E.D.N.Y. 2003) ...................................................................................19

*Ally v. Sukkar*,
  128 Fed. Appx. 194 (2d Cir. 2005).........................................................................................12

*Am. Patriots Advocating for Disabled Rights, Inc. v. Budget Suites of Am. LLC*,
  No. 09-CV-01528-KJD-GWF, 2011 U.S. Dist. LEXIS 33954 (D. Nev. Mar. 29, 2011)........17

*Angell v. U.S. Army Corps of Engineers*,
  149 Fed. Appx. 34 (2d Cir. 2005)..................................................................................... 20-21

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)...........................................................................................................24

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1983)..................................................................................................................9

*Ballard v. Rockville Centre Housing Authority*,
  605 F.2d 1283 (2d Cir. 1979)................................................................................................24

*Bank of New York v. First Millennium, Inc.*,
  607 F.3d 905 (2d Cir. 2010)..................................................................................................18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................24

*Brooks-Jones v. Hones*,
  916 F. Supp. 280 (S.D.N.Y. 1996) ........................................................................................10

*Bush v. Danziger*,
  No. 06 Civ. 5529, 2006 U.S. Dist. LEXIS 77035 (S.D.N.Y. Oct. 23, 2006) .........................12

*Capogrosso v. 30 River Court East Urban Renewal Co.,*
  482 Fed. Appx. 677 (3d Cir. 2012) ........................................................................17

*Chiania v. Broadmoor Assoc.,*
  No. 94 Civ. 0613, 1994 U.S. Dist. LEXIS 989 (S.D.N.Y. Feb. 2, 1994) ................................12

*Clark v. Bloomberg,*
  No. 10-CV-1263 (JG), 2010 U.S. Dist. LEXIS 35802 (E.D.N.Y. Apr. 12, 2010) .................23

*Diamond "D" Constr. Corp. v. McGowan,*
  282 F.3d 191 (2d Cir. 2002) ..................................................................................22

*Dist. of Columbia Court of Appeals v. Feldman,*
  460 U.S. 462 (1983) .............................................................................................9

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
  544 U.S. 280 (2005) ..........................................................................................9, 13

*Fifty CPW Tenants Corp. v. Epstein,*
  16 A.D.3d 292, 792 N.Y.S.2d 58 (1st Dep't 2005) .................................................19

*Genger v. Sharon,*
  No. 10 Civ. 4506 (SAS), 2012 U.S. Dist. LEXIS 165220 (S.D.N.Y. Nov. 19, 2012) ............18

*Genova v. Town of Southampton,*
  776 F.2d 1560 (2d Cir. 1985) ................................................................................21

*Gianatasio v. D'Agostino,*
  862 F. Supp. 2d 343 (S.D.N.Y. 2012) ....................................................................19

*Giannone v. York Tape & Label, Inc.,*
  548 F.3d 191 (2d Cir. 2008) ...........................................................................19, 20

*Green v. Mansour,*
  474 U.S. 64 (1985) ..............................................................................................18

*Harding v. Paramount Pictures,*
  No. 12 Civ. 66 (DAB)(HBP), 2013 U.S. Dist. LEXIS 54217 (S.D.N.Y.
  Jan. 16, 2013) .............................................................................................18, 19

*Harvey v. 320 Owners Corp.,*
  No. 07 Civ. 6763 (LAP), 2009 U.S. Dist. LEXIS 61007 (S.D.N.Y. Apr. 20, 2009) .........22, 23

*Hawecker v.Sorensen,*
  No. 10-cv-00085 OWW JLT, 2011 U.S. Dist. LEXIS 3018 (E.D. Cal. Jan. 12, 2011) ..........17

*Hoblock v. Albany Cnty. Bd. of Elecs.,*
  422 F. 3d 77 (2d Cir. 2005) ..............................................................................9, 10

*Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.*,
    549 F.3d 100 (2d Cir. 2008)..................................................................................................16

*In re Derek Josey*,
    9 N.Y.3d 386, 849 N.Y.S.2d 497 (2007) ..............................................................................19

*In re MTBE Prods. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013)....................................................................................................16

*Johnson v. Smithsonian Inst.*,
    189 F.3d 280 (2d Cir. 2009)..................................................................................................10

*Kaplan v. Garfield First Assocs.*, LLC,
    No. 11-CV-4631 (RRM) (LB), 2011 U.S. Dist. LEXIS 109681 (E.D.N.Y. Sept. 27,
    2011) ....................................................................................................................................12

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)..................................................................................................11

*Kristopher v. Stone Street Props., LLC*,
    No. 13 Civ. 566 (RJS), 2013 U.S. Dist. LEXIS (S.D.N.Y. Jan. 29, 2013)..............................12

*Kropelnicki v. Siegel*,
    290 F.3d 118 (2d Cir. 2002)....................................................................................................9

*McAllan v. Malatzky*,
    No. 97 Civ. 8291, 1998 U.S. Dist. LEXIS 591 (S.D.N.Y. Jan. 21, 1998)................................12

*Monahan v. New York City Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000)..................................................................................................18

*NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*,
    105 F. 3d 792 (2d Cir. 1997)..................................................................................................19

*Niles v. Wilshire Inv. Group*
    No. CV 09-3638 (JFB) (ARL), 2011 U.S. Dist. LEXIS 154281 (E.D.N.Y. Aug. 31,
    2011) (Report & Recommendation), *adopted by* 859 F. Supp. 2d 308 (E.D.N.Y.
    2012) ....................................................................................................................................10

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..............................................................................................................22

*Pharr v. Evergreen Garden, Inc.*,
    123 Fed. Appx. 420 (2d Cir. 2005)........................................................................................10

*Purdy v. Zeldes*,
    337 F.3d 253 (2d Cir. 2003)..................................................................................................21

*Raines v. Byrd,*
   521 U.S. 811 (1997)..............................................................................................................16

*Randall's Island Aquatic Leisure, LLC v. City of New York,*
   No. 12 Civ. 6039 (CM), 2013 U.S. Dist. LEXIS 84569 (S.D.N.Y. June 13, 2013)...............23

*Reyes v. Fairfield Props.,*
   661 F. Supp. 2d 249 (E.D.N.Y. 2009) ..................................................................................10

*Robinson v. Cusack,*
   No. 05-CV-5318 (DLI) (JMA), 2007 U.S. Dist. LEXIS 50073 (E.D.N.Y. July 10,
   2007) .....................................................................................................................................10

*Rooker v. Fid. Trust Co.,*
   263 U.S. 413 (1923)................................................................................................................9

*Rothenberg v. Stone,*
   234 F. Supp. 2d 217 (E.D.N.Y. 2002) ..................................................................................18

*Rothman v. Gregor,*
   220 F.3d 81 (2d Cir. 2000).....................................................................................................11

*Sasmor v. Powell,*
   No. 11-CV-4645 (KAM) (JO), 2013 U.S. Dist. LEXIS 47044 (Mar. 31, 2013)....................23

*Shain v. Ellison,*
   356 F.3d 211 (2d Cir. 2004), *adopted by* 2013 U.S. Dist. LEXIS 83519 (S.D.N.Y.
   May 11, 2013)........................................................................................................................16

*Spargo v. N.Y. State Comm'n on Judicial Conduct,*
   351 F.3d 65 (2d Cir. 2003).....................................................................................................22

*Staehr v. Hartford Fin. Servs. Grp.,*
   547 F.3d 406 (2d Cir. 2008)...................................................................................................11

*Trang v. Concris Realty Co.,*
   No. 06-CV-5441 (RJD) (LB), 2005 U.S. Dist. LEXIS 44129 (E.D.N.Y. June 14,
   2005) .....................................................................................................................................12

*Tsabbar v. Madden,*
   No. 07-CV-4923 (DLI) (LB), 2007 U.S. Dist. LEXIS 89591 (E.D.N.Y. Dec. 5, 2007).........12

*United States v. Windsor,*
   133 S. Ct. 2675 (2013)...........................................................................................................16

*Vaccariello v. XM Satellite Radio Inc.,*
   No. 08 Civ. 5336 (CS) (GAY), 2011 U.S. Dist. LEXIS 157437 (S.D.N.Y. Apr. 4,
   2011) .....................................................................................................................................16

*Younger v. Harris*,
    401 U.S. 37 (1971) ...................................................................................................2, 22, 23, 25

**United States Constitution**

U.S. Const., Amend. XI ...................................................................................................16, 18

U.S. Const., Amend. XIV ...................................................................................................12, 24

**Federal Statutes**

12 U.S.C.
    § 1715z-1 ...................................................................................................................2

28 U.S.C.
    § 1257 ...................................................................................................................9

42 U.S.C.
    § 1437 ...................................................................................................................2
    § 1983 ...................................................................................................11, 12, 20, 23, 24

**Federal Rules of Civil Procedure**

Rule 12(b)(1) ...................................................................................................................8

Rule 12(b)(6) ...................................................................................................................24

## PRELIMINARY STATEMENT

This action challenges a provision in a residential lease form that requires Plaintiffs, current and former tenants of a subsidized apartment complex ("Riverview") in Yonkers, New York, to pay for the electricity they use. The lease form (the "Lease") issued by the New York State Division of Housing and Community Renewal ("DHCR") defines electric utility charges as "additional rent." As a result, the Complaint alleges that the property owner, non-party Riverview II Preservation L.P. (the "Landlord"), can bring eviction proceedings in state court against tenants who fail to pay their electricity charges.

Plaintiffs claim this harms them because, if not for the Lease term defining electricity charges as additional rent, it would be harder for the Landlord to obtain a remedy for Plaintiffs' failure to pay what they owe. Plaintiffs commenced this action after unsuccessfully challenging the additional rent provision in state court and stipulating to pay their past due electricity charges and all future electricity charges as required by their leases. This is beyond dispute: Plaintiff's counsel has stated under penalty of perjury that the additional rent "provision whose legality Plaintiffs challenge is the very one" they challenged unsuccessfully in state court.

In short, this case involves classic questions of New York landlord-tenant law, which have previously been decided in state court. Plaintiffs, dissatisfied with the outcome in state court, seek to relitigate their challenge to the Lease terms in federal court. Their Second Amended Complaint (the "Complaint") asserts four claims against the U.S. Department of Housing and Urban Development ("HUD") and its Secretary, and one claim against Commissioner Darryl C. Towns of DHCR. Plaintiffs allege that by requiring the Landlord to use a lease that defines utilities as additional rent, Commissioner Towns has somehow violated Plaintiffs' constitutionally protected equal protection rights and property interests.

1

The Complaint does not hint at the nature of these purported constitutional violations. The Complaint clearly alleges, however, that Plaintiffs' leases require them to pay for the electricity they consume; that Plaintiffs failed to pay their electricity bills; that the Landlord brought eviction proceedings in state court for non-payment of electricity charges as additional rent; that Plaintiffs raised the alleged invalidity of the additional rent clause as a defense; that the state court upheld and enforced the Lease as written; and that each Plaintiff settled with the Landlord, agreeing to pay their electricity arrears over time, and to continue paying their electricity bills as additional rent each month. Despite these state-court judgments and settlements, Plaintiffs now ask this Court to rule on the validity of the Lease.

Under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to review the prior state-court rulings. The Court also lacks jurisdiction over Plaintiff Brenda Thompson's claim because she has moved out of Riverview, and thus lacks Article III standing. Plaintiffs' claims are also barred by *res judicata* and collateral estoppel. To the extent that Plaintiffs' claims are based on ongoing state proceedings (rather than prior judgments), their claims remain precluded, and also must be dismissed pursuant to the *Younger* abstention doctrine. Finally, the Complaint should be dismissed for failing to state a constitutional violation.

## FACTUAL AND PROCEDURAL BACKGROUND

Riverview is a privately owned residential complex whose Landlord receives federal subsidies under Section 236 of the National Housing Act, 12 U.S.C. § 1715z-1, in exchange for providing affordable housing to low-income residents. Compl. ¶ 3. Plaintiffs are low-income individuals who have received government housing assistance in the form of enhanced vouchers pursuant to Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437. Compl. ¶ 63. All six

income-eligible Plaintiffs have received additional grants through a state Home Electricity Assistance Program ("HEAP"). Compl. ¶¶ 147, 174, 198, 223, 242, 263, & 287.

In 2010, the New York State Public Service Commission ("PSC"), DHCR, and HUD approved a plan to "submeter" electricity at Riverview. Compl. ¶¶ 90, 93 & 94. Submetering means that each apartment's electricity use is measured separately, and is billed by the Landlord at cost. The PSC approved the submetering plan to serve the public policy goal of promoting energy conservation and awareness, and not coincidentally, helping tenants save money.[1] Each Plaintiff receives a utility allowance – a reduction in rent – to reduce the effective cost of paying submetered electricity charges. Plaintiffs concede there is no statutory or regulatory mandate that this rent reduction cover the entire cost of the electricity each tenant consumes. *See* Berg Decl., Ex. 3, at 4. Even so, several Plaintiffs have saved money because their utility allowances exceeded their electricity charges. *See* Compl. ¶¶ 199-200, 225-26, & 243-44.

Plaintiffs' tenancies are governed by the Lease. Compl. ¶ 75. Under the Lease terms, submetered electricity charges are deemed "additional rent." Compl., Ex. A § 15. Thus, the Complaint alleges, a tenant who fails to pay electric utilities can be evicted for non-payment of additional rent. Compl. ¶ 114 & Ex. G (Decision & Order of Yonkers City Court). Plaintiffs allege that treating electricity as additional rent is "inconsistent with" federal law. Compl. ¶ 9.

---

[1] The PSC first approved submetering at Riverview in 2008, finding that it would "encourage residents to further reduce energy costs and electric consumption through additional conservation measures." Compl. ¶¶ 81-82; Berg Decl., Ex. 1, at 4. On reconsideration, the PSC reaffirmed the submetering plan while imposing added conditions on the Landlord, including hiring an energy efficiency expert to help tenants "manage their electricity consumption, [which] will likely lead to further reductions in electricity usage." Compl. ¶¶ 90-91; Berg Decl., Ex. 2, at 18. *See also* Compl., Ex. E (DHCR letter affirming that "individual metering, under which each consumer is responsible for his or her own electrical consumption, provides a significant incentive for conservation of electricity").

***Brenda Thompson*** was a Riverview resident from 2005 until January 2013, when she moved into a federally subsidized building in Yonkers that is not submetered for electricity. Compl. ¶¶ 126-27 & 162. In 2011, the Landlord filed a petition to evict Thompson for non-payment of electricity charges. *Id.* ¶ 156. Thompson moved to dismiss, making the same arguments as in the instant case. Berg Decl., Ex. 4. The state court expressly upheld the validity of the Lease's additional rent clause, Compl., Ex. G, and judgment was entered against Thompson. Berg Decl., Ex. 5. Thompson (with other tenants) filed a notice of appeal, but withdrew the appeal after settling with the Landlord. Berg Decl., Ex. 6. Thompson does not seek any relief against Commissioner Towns. *See* Compl. at 45-47. Instead, she seeks a retrospective declaratory judgment that in January 2013 she was "involuntarily displaced based on HUD's action or inaction." *Id.* at 47.

***Victoria Guerrero*** has lived at Riverview since 2003 and in her current apartment since about 2011. Compl. ¶¶ 212-13. Even without regard to the HEAP grants she has received, Guerrero's utility allowance during the period of submetering ($4,576) is greater than her electricity charges ($4,451). *Id.* ¶¶ 225-226. Thus, Guerrero has benefitted from the sub-metering of her apartment. Yet she did not pay her utility bills in full, and in 2011 the Landlord served a petition for summary eviction against Guerrero for non-payment of electricity charges. *Id.* ¶ 230. Guerrero moved to dismiss, making the same arguments as in the instant case. Berg Decl., Ex. 7. The state court expressly upheld the validity of the Lease's additional rent clause, Compl., Ex. G, and judgment was entered against Guerrero. Berg Decl., Ex. 8. Guerrero (with other tenants) filed a notice of appeal, but withdrew the appeal after settling with the Landlord. Berg Decl., Ex. 9.

4

*David Romero* has lived at Riverview since about 1997. Compl. ¶¶ 252-53. Romero's HEAP assistance ($1,300), combined with his utility allowance during the period of submetering ($7,063), is greater than his electricity charges ($7,534). *Id.* ¶¶ 263-65. Thus, Romero has benefitted from the combination of HEAP payments and sub-metering. Yet he did not pay his utility bills in full, and in 2011 the Landlord served a petition to evict Romero for non-payment of electricity charges. *Id.* ¶ 272. Romero moved to dismiss, making the same arguments as in the instant case. Berg Decl., Ex. 10. The state court expressly upheld the validity of the Lease's additional rent clause, Compl., Ex. G, and judgment was entered against Romero. Berg Decl., Ex. 11. Romero (with other tenants) filed a notice of appeal, but withdrew the appeal after settling with the Landlord. Berg Decl., Ex. 12.

*The Consolidated Roberts Cases.* The eviction proceedings against Thompson, Guerrero, and Romero were consolidated with several others for motion practice under the caption *Riverview II Preservation LP v. Roberts*. The tenants, represented by Legal Services of the Hudson Valley ("LSHV"), moved to dismiss the eviction petitions. The Landlord cross-moved for summary judgment, which was granted by Decision and Order of the Yonkers City Court (Martinelli, J.) dated June 11, 2012. Compl., Ex. G.

Judge Martinelli expressly rejected the tenants' arguments "that their respective leases did not obligate them to pay the electrical charges and that the electrical charges do not constitute rent or additional rent." *Id.* at 2. First, the state court held that submetering was lawful. In reaching that determination, the court gave "substantial deference" to prior rulings of HUD, DHCR, and the PSC, which had specifically authorized submetering at Riverview subject to certain conditions. *Id.* at 5. Second, the court held that the additional rent clause of the Lease "explicitly contemplates sub-metering, whereby the landlord would reduce the tenant's rent by

the applicable utility allowance and begin charging the tenant for his/her electricity consumption." *Id.* at 6. Based on the clear and unambiguous language of the Lease, the court rejected the tenants' argument that "the lease does not permit submetering for heat . . . ." *Id.*

Thompson, Guerrero, Romero, and the other tenants in the consolidated *Roberts* cases filed a notice of appeal with the Appellate Term of the New York Supreme Court, but withdrew the appeal pursuant to a settlement they reached with the Landlord. The Stipulation of Settlement was signed in November 2012 and so-ordered by Judge Martinelli on April 3, 2013. Compl. ¶ 156; Berg Decl., Ex. 13. In the Stipulation of Settlement, the tenants expressly waived the right to appeal the decision of the Yonkers City Court upholding and enforcing the Lease's additional rent clause. *Id.* § 3. Also as part of the settlement, the tenants signed deferred payment agreements, in which they agreed to pay their electricity arrears over time, and to stay current with future rent and additional rent payments. Berg Decl., Ex. 13.

After the stipulation was signed, however, Thompson failed to pay the amounts due for past and current electricity charges, was served with a notice to pay within ten days or face eviction, and vacated her apartment in January 2013. Compl. ¶¶ 157, 159. Romero also allegedly failed to pay the amounts due for past and current electricity charges. Compl. ¶ 274. There is no allegation of a default or ongoing difficulties involving Guerrero.

The remaining Plaintiffs were named in state-court eviction proceedings and litigated the validity of the additional rent provision independently of the consolidated *Roberts* cases.

*Carl Sparaci* has lived at Riverview since May 2010. Compl. ¶¶ 163, 168. Despite receiving HEAP assistance ($1,350) and a utility allowance of $3,762 during the period of submetering, Sparaci's electricity use has resulted in bills totaling $5,569. *Id.* ¶¶ 170-71 & 174. In February 2013, the Landlord served a warrant of eviction on Sparaci for non-payment of

electric utilities. To resolve the matter, Sparaci entered into a stipulation of settlement as of April 15, 2013, that required him to pay $3,305 in past due electricity bills. Compl. ¶ 178; Berg Decl., Ex. 14. In June 2013, the Landlord served another warrant of eviction on Sparaci for allegedly defaulting under the stipulation of settlement, but the Yonkers City Court subsequently granted Sparaci's motion to vacate the warrant of eviction. Compl. ¶¶ 179-180.

 ***Mildred Hernandez*** has lived at Riverview since 2000. Compl. ¶¶ 183-84. The Complaint alleges that Hernandez was ineligible for more than $1 in HEAP assistance "due to her household's income." Compl. ¶ 198. Even without regard to HEAP assistance, Hernandez's utility allowance during the period of submetering (approximately $4,576) is greater than her electric bills ($4,248). *Id.* ¶¶ 225-226. Thus, Hernandez has benefitted from the submetering of her apartment. Yet she did not pay her utility bills in full. In September 2012, the Landlord commenced summary eviction proceedings against Hernandez in Yonkers City Court seeking $1,291.49 in unpaid rent and electric utilities. *Id.* ¶ 205 & Berg Decl., Ex. 15. Hernandez settled, agreeing to pay her past due electricity charges and to remain current with her future electricity bills. *Id.* ¶ 206; Berg Decl., Ex. 16.

 ***Fatoumata Thiam*** has lived at Riverview since 2006. Compl. ¶¶ 234-35. Even without regard to HEAP assistance, the total value of Thiam's utility allowance during the period of submetering (approximately $4,576) is greater than the amount of her electric bills ($4,151). ¶¶ 243-44. Thus, Thiam has benefitted from the submetering of her apartment. Yet she has not paid her utility bills in full. The Complaint alleges that the Landlord has brought summary eviction proceedings against Thiam in Yonkers City Court for non-payment of electric utilities on three occasions since 2011. *Id.* ¶ 249. In relevant part, public records on file with the Yonkers City Court clerk show that the Landlord brought an eviction proceeding against Thiam

7

on July 18, 2011 seeking $956.69 in rent and additional rent, including $584.69 in unpaid electricity charges. Berg Decl., Ex. 17. On September 11, 2012, the Court entered judgment awarding the Landlord the full amount of rent and additional rent demanded, plus $75 in costs, and issued a warrant of eviction. Berg Decl., Ex. 18. Subsequently, however, on October 26, 2012, Thiam entered into a settlement with the Landlord that stayed the warrant of eviction, provided she pay a final judgment of $237.05 and, going forward, pay $50 monthly toward her arrears while staying current with "the monthly rent and electric every month beginning Nov. 2012." Berg Decl., Ex. 19. Subsequent proceedings were brought by the Landlord, alleging that Thiam failed to pay her rent and additional rent, notwithstanding the October 2012 settlement agreement. *See* Compl. ¶ 249.

*Kwadwo Poku* has lived at Riverview since 2004, and in his current apartment since 2009. Compl. ¶¶ 276-77. Poku's HEAP assistance ($850), combined with the total value of his utility allowance during the period of submetering ($5,709), is greater than the amount of his electric bills for the same period ($6,511). *Id.* ¶¶ 287-89. Thus, Poku has benefitted from the combination of HEAP payments and submetering. Yet he has not paid his electricity bills in full. In November 2011, the Landlord brought a summary eviction proceeding against Poku in Yonkers City Court, seeking unpaid electric utilities. Compl. ¶ 294. In January 2012, Poku signed a stipulation of settlement with the Landlord. Berg Decl., Ex. 20. After Poku allegedly defaulted by failing to pay his monthly electricity bills, the Yonkers City Court entered judgment against him dated December 5, 2012. Berg Decl., Ex. 21. However, Poku and the Landlord entered into another Stipulation of Settlement dated January 4, 2013, which required Poku to pay $100 per month toward his past due electricity bills, and to pay his rent and electricity charges going forward. Berg Decl., Ex. 22.

## ARGUMENT

### I.    THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFFS' CLAIMS

#### A.    <u>District Courts Lack Jurisdiction To Review State-Court Decisions</u>

Plaintiffs' claims against Commissioner Towns are jurisdictionally barred by the *Rooker-Feldman* doctrine, which precludes the lower federal courts from reviewing most state-court judgments. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923). Plaintiffs' counsel has conceded under penalty of perjury that the additional rent clause challenged here "is the very one" previously upheld by the Yonkers City Court. Berg Decl., Ex. 23, ¶ 8. That concession mandates dismissal under *Rooker-Feldman,* Fed. R. Civ. P. 12(b)(1), and, alternatively, on grounds of *res judicata.*

The *Rooker-Feldman* doctrine holds that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F. 3d 77, 84 (2d Cir. 2005). "The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments . . . unless otherwise provided by Congress." *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). *See also Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1983) (holding that the "lower [federal] courts possess no power whatever to sit in direct review of state court decisions"). As the Supreme Court has explained, *Rooker-Feldman* bars federal district courts from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "This doctrine is designed to protect the integrity

9

of state court judgments[.]" *Allianz Ins. Co. v. Cavagnuolo*, No. 03 Civ. 1636 (HB), 2004 U.S. Dist. LEXIS 8186, at \*20 (S.D.N.Y. May 6, 2004) (internal citation omitted).

A plaintiff cannot circumvent this jurisdictional bar by slapping a federal label on her challenge to a state-court judgment. *See Brooks-Jones v. Hones*, 916 F. Supp. 280, 281-82 (S.D.N.Y. 1996). *Rooker-Feldman* not only prohibits federal courts from considering claims identical to those previously resolved in state court, but also "bars federal courts from considering claims that are inextricably intertwined" with prior state-court determinations. *Johnson v. Smithsonian Inst.*, 189 F.3d 280, 185 (2d Cir. 2009). Thus, "if a subsequent claim arises from the same factual grouping as a previously resolved claim, the subsequent claim is barred, regardless of whether the two suits are based on different legal theories or seek different remedies." *Pharr v. Evergreen Garden, Inc.*, 123 Fed. Appx. 420, 422-23 (2d Cir. 2005).

The *Rooker-Feldman* doctrine applies when "[t]he federal-court plaintiff (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered." *Hoblock*, 422 F.3d at 85. A state-court settlement has the same effect as a final judgment for purposes of *Rooker-Feldman*. *See Cavagnuolo*, 2004 U.S. Dist. LEXIS 8186, at \*20-21; *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009); *Robinson v. Cusack*, No. 05-CV-5318 (DLI) (JMA), 2007 U.S. Dist. LEXIS 50073, at \*14 (E.D.N.Y. July 10, 2007); *Niles v. Wilshire Inv. Group* , No. CV 09-3638 (JFB) (ARL), 2011 U.S. Dist. LEXIS 154281, at \*41 (E.D.N.Y. Aug. 31, 2011) (Report & Recommendation), *adopted by* 859 F. Supp. 2d 308 (E.D.N.Y. 2012).

**B.**     ***Rooker-Feldman*** **Bars Relitigation of Landlord-Tenant Cases**

The allegations of the Complaint – and the records of the underlying landlord-tenant

proceedings in Yonkers City Court – are fatal to Plaintiffs' claims against Commissioner Towns.

The Complaint and court records clearly establish that each Plaintiff was the losing party in an

eviction proceeding in Yonkers City Court and/or settled such a proceeding. In the eviction

proceedings, the Landlord expressly alleged that the Plaintiffs failed to pay electric utility

charges due as additional rent under the Lease. Of course, that is the same question that

Plaintiffs seek to relitigate here in the guise of a Section 1983 claim against Commissioner

Towns. Compl. ¶¶ 327-330; Berg Decl., Ex. 23. Plaintiffs' federal civil rights claim is merely

an attempted end run around the New York State courts' judgments (and the settlements that

Plaintiffs freely entered into) upholding the additional rent clause. As such, it is a classic case

for dismissal for lack of subject matter jurisdiction pursuant to *Rooker-Feldman.*[2]

Courts in the Second Circuit have consistently held that eviction proceedings and other

cases determining the rights and obligations of tenants, once litigated in state court, cannot be

reviewed in federal court. In one such case, the New York City Housing Authority prevailed in a

non-payment proceeding in Bronx Housing Court. The tenant did not appeal, but instead filed a

federal court complaint against the housing authority, the presiding state court judge, and others,

asserting violations of her rights under the U.S. Constitution and the U.S. Housing Act of 1937.

The District Court held that *Rooker-Feldman* barred the plaintiff's claims despite her attempt to

---

[2] This Court may take judicial notice of the state-court filings, or may consider them as
documents that the Complaint relies on and incorporates by reference. *See Staehr v. Hartford
Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d
767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other
courts . . . to establish the fact of such litigation and related filings.")); *Rothman v. Gregor*, 220
F.3d 81, 88-89 (2d Cir. 2000) (holding that a document that is pleaded or relied upon by a
plaintiff in a complaint is deemed incorporated into that complaint – even if it is not physically
appended to the complaint).

reframe her state-law claims as violations of due process and other federal rights. *See Bush v. Danziger*, No. 06 Civ. 5529, 2006 U.S. Dist. LEXIS 77035, at *13-14 (S.D.N.Y. Oct. 23, 2006). *See also Kaplan v. Garfield First Assocs.*, LLC, No. 11-CV-4631 (RRM) (LB), 2011 U.S. Dist. LEXIS 109681, at *4-6  (E.D.N.Y. Sept. 27, 2011) (*Rooker-Feldman* precludes evicted tenant's Americans with Disabilities Act claim seeking restoration of lease rights contrary to state-court judgment); *Kristopher v. Stone Street Props., LLC*, No. 13 Civ. 566 (RJS), 2013 U.S. Dist. LEXIS, at *6-7 (S.D.N.Y. Jan. 29, 2013) (*Rooker-Feldman* bars evicted tenant's federal Fair Housing Act claim that would have required district court to review state housing court's prior eviction order); *Trang v. Concris Realty Co.*, No. 06-CV-5441 (RJD) (LB), 2005 U.S. Dist. LEXIS 44129, at *6-7 (E.D.N.Y. June 14, 2005) (same).

In another Southern District case, a tenant who lost in housing court brought a federal action under Section 1983 against several state officials and judges, alleging violations of his rights under the Fourteenth Amendment – just as Plaintiffs here seek to do.  The court held that *Rooker-Feldman* precluded federal court jurisdiction "because the relief [plaintiff] seeks 'merely attest[s] to plaintiff's dissatisfaction with the course [his] litigation has taken in the state courts." *McAllan v. Malatzky*, No. 97 Civ. 8291, 1998 U.S. Dist. LEXIS 591, at *6 (S.D.N.Y. Jan. 21, 1998) (quoting *Chiania v. Broadmoor Assoc.*, No. 94 Civ. 0613, 1994 U.S. Dist. LEXIS 989, at *3-4 (S.D.N.Y. Feb. 2, 1994)). *See also Ally v. Sukkar*, 128 Fed. Appx. 194, 195 (2d Cir. 2005) (affirming dismissal under *Rooker-Feldman* despite tenant's attempt to assert federal constitutional claims because "the 'essence' of her claims remains unchanged"); *Tsabbar v. Madden*, No. 07-CV-4923 (DLI) (LB), 2007 U.S. Dist. LEXIS 89591, at *4 (E.D.N.Y. Dec. 5, 2007) (dismissing evicted lessee's Section 1983 complaint for injunctive relief against state

judge, clerk, and referee because "the Supreme Court has held this is precisely the type of case to which the *Rooker-Feldman* doctrine applies") (citing *Exxon Mobil*, 544 U.S. 280).

### C. *Rooker-Feldman* Bars Plaintiffs' Claims Against Commissioner Towns

Plaintiffs' dissatisfaction with the final judgments of the Yonkers City Court does not give this court appellate jurisdiction to review the outcome of the state court proceedings.

#### 1. Thompson, Guerrero, and Romero

In 2011, the Landlord brought non-payment eviction proceedings in Yonkers City Court against Thompson, Guerrero, and Romero for failure to pay electricity charges as additional rent under the Lease. Compl. ¶¶ 156, 230 & 272. In the consolidated *Roberts* case, these tenants moved to dismiss the Landlord's petitions, expressly challenging both (i) the Landlord's right under the Lease to collect electric utility charges as additional rent, and (ii) the total combined amount of rent plus additional rent charged. *See* Compl., Ex. G; Berg Decl., Exs. 4, 7 &10 (Affs. in Supp. of Mots. to Dismiss ¶¶ 17-19). These are precisely the claims that Plaintiffs now seek to relitigate. *See* Compl. ¶¶ 58, 103 & 328; Berg Decl., Ex. 3, at 3.

In its Decision and Order, the Yonkers City Court denied the tenants' motions to dismiss the eviction proceedings and granted the Landlord's cross-motions for summary judgment. Compl., Ex. G. The Court noted that the Landlord had initiated the proceedings "based on [the tenants'] failure to pay electrical charges due under the lease." *Id.* at 1-2. Subsequently, the tenants moved to dismiss the non-payment proceedings "on the basis that their respective leases did not obligate them to pay the electrical charges and that the electrical charges do not constitute rent or additional rent." *Id.* at 2. More specifically, the tenants claimed "that there is no valid lease agreement obligating respondent to pay for electric charges and that the electric charges do not constitute rent or additional rent under the federal laws, rules and regulations." *Id.* at 3. In

13

response, the Landlord successfully argued that its "right to collect electrical charges is clearly set forth within paragraph 15 of the [Lease] and specifically designates those charges as additional rent." *Id.*

Thompson, Guerrero, and Romero appealed to the New York Supreme Court, Appellate Term, but withdrew their appeals (Berg Decl., Exs. 6, 9, & 12) and entered into a settlement with the Landlord. Compl. ¶¶ 156, 231 & 273; Berg Decl., Ex. 13. In the stipulation of settlement, the tenants waived any right to appeal the judgment of the Yonkers City Court. *Id.* § 3. They also stipulated to pay down their past due electricity charges and stay current on their rent and utilities in the future. *See* Berg Decl., Ex. 13 (Deferred Payment Agreements).

Based on the foregoing, the *Rooker-Feldman* doctrine plainly bars the claims of Thompson, Guerrero, and Romero. All three lost on summary judgment in state court (and subsequently settled their appeals). All three complain of injuries caused by the state-court judgment upholding the Landlord's right to collect electric utility payments as additional rent under the Lease. All three invite this Court to review and reject the state court judgment by finding that the additional rent term is barred by the same federal laws and regulations that the tenants relied on without success in state court. Finally, this action was commenced in May 2013, almost a year after the state court issued its judgment in June 2012 (and after the settlement). This court lacks jurisdiction over the claims of Thompson, Guerrero, and Romero.

### 2. **Hernandez, Sparaci, Thiam, and Poku**

The *Rooker-Feldman* doctrine also bars this Court from exercising jurisdiction over the remaining Plaintiffs' claims against Commissioner Towns. The Landlord filed summary eviction proceedings against Hernandez, Sparaci, Thiam, and Poku in Yonkers City Court for

14

non-payment of electric utility charges due as additional rent under the Lease. All four matters were resolved in state court.

Hernandez entered into a stipulation of settlement with the Landlord dated February 25, 2013. Compl. ¶ 206; Berg Decl., Ex. 16. In the stipulation, Hernandez agreed to a final judgment of $365.85, and to pay $50 per month toward her past due electricity bills "in addition to the monthly rent and electric every month, beginning March 2013." *Id.*

Sparaci entered into a stipulation of settlement dated April 5, 2013. Compl. ¶ 178; Berg Decl., Ex. 14. In the stipulation, Sparaci agreed to a final judgment of $3,305, and to pay $35 per month toward his past due electricity bills and to stay current with his future rent and electricity payments. *Id.*[3]

On October 26, 2012, Thiam signed a stipulation of settlement agreeing to a final judgment of $237.05. Berg Decl., Ex. 19. Thiam agreed to pay $50 monthly toward her arrears, and to pay "the monthly rent and electric every month beginning Nov. 2012." *Id.*

On January 10, 2012, Poku signed a stipulation of settlement agreeing to a final judgment of $2,603.25. Berg Decl., Ex. 20. After being held in default, *id.*, Ex. 21, Poku entered into a second stipulation of settlement with the Landlord dated January 4, 2013. *Id.*, Ex. 22.

Having settled in state court, Hernandez, Sparaci, Thiam, and Poku cannot bring a federal action complaining that their state court settlements require them to pay electricity charges as additional rent under the Lease. Nor can they ask this court to review and overrule the result of the state court proceedings. *Rooker-Feldman* mandates dismissal of their claims.

---

[3] The Complaint further alleges that Sparaci was served a subsequent eviction notice for defaulting on his payment obligations under the stipulation of settlement. Compl. ¶ 179. Any post-judgment or post-settlement proceedings involving Sparaci or any other plaintiffs have no effect on the instant motion. They are essentially state law breach of contract claims, seeking remedies for alleged violations of prior settlement agreements. They have no bearing on the *Rooker-Feldman* analysis, which turns on the fact that Plaintiffs lost and/or settled in state court.

## II.   THOMPSON'S CLAIMS ARE NOT JUSTICIABLE

This Court lacks subject matter jurisdiction over Thompson's claim against

Commissioner Towns because, as a non-resident of Riverview, she has no standing to seek

prospective injunctive relief against the Commissioner.  Of course, any other relief she might

demand is barred by the doctrine of sovereign immunity.  *See* U.S. Const., Amend. XI.

Thompson lacks Article III standing, an essential element of the constitutional "case" or

"controversy" requirement.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Huff Asset Mgmt. Co.*

*v. Deloitte & Touche L.L.P.*, 549 F.3d 100, 106 (2d Cir. 2008).  As the Supreme Court recently

held, "The requirements of Article III standing are familiar:

> First, the plaintiff must have suffered an injury in fact – an invasion of a
> legally protected interest which is (a) concrete and particularized, and
> (b) actual or imminent, not conjectural or hypothetical.  Second, there must be
> a causal connection between the injury and the conduct complained of – the
> injury has to be fairly . . . traceable to the challenged action of the
> defendant . . .  Third, it must be likely, as opposed to merely speculative, that
> the injury will be redressed by a favorable decision."

*United States v. Windsor*, 133 S. Ct. 2675, 2685-86 (2013).  *See also In re MTBE Prods. Liab.*

*Litig.*, 725 F.3d 65, 83-84 (2d Cir. 2013).

Thompson cannot possibly prove two of the essential elements of Article III standing:

*injury in fact* and *redressability*.  "To satisfy standing's injury-in-fact requirement, a plaintiff

seeking injunctive relief must demonstrate . . . a 'likelihood of future harm . . . .'"  *Vaccariello v.*

*XM Satellite Radio Inc.*, No. 08 Civ. 5336 (CS) (GAY), 2011 U.S.  Dist. LEXIS 157437, at *10

(S.D.N.Y. Apr. 4, 2011) (Report & Recommendation) (quoting *Shain v. Ellison*, 356 F.3d 211,

216 (2d Cir. 2004)), *adopted by* 2013 U.S. Dist. LEXIS 83519 (S.D.N.Y. May 11, 2013).

In January 2013, four months before filing this action, Thompson moved out of

Riverview to a different federally subsidized building.  Compl. ¶¶ 118-19 & 132.  The Complaint

expressly alleges that Thompson moved "to her current address because the building is not submetered and electricity is included in her rent." Compl. ¶ 134. These allegations preclude any possibility that Thompson can show the requisite "likelihood of future harm." She is no longer a Riverview tenant, and her new building does not charge submetered electricity as additional rent. That is why she moved there. Compl. ¶ 134. By the same token, the prospective relief sought in the Complaint cannot redress any grievance of Thompson's.

In similar circumstances, the Third Circuit affirmed the dismissal a former tenant's complaint against HUD for lack of standing. *See Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 Fed. Appx. 677 (3d Cir. 2012). The plaintiff's apartment was damaged after a water pipe burst; she sought an injunction compelling HUD to inspect and monitor the remediation of mold in the apartment. But the plaintiff had been evicted for non-payment of rent and no longer lived in the apartment. The court "conclude[d] that she obviously therefore faces no threat of any harm in the absence of her requested injunction." *Id.* at 681. *See also Hawecker v.Sorensen*, No. 10-cv-00085 OWW JLT, 2011 U.S. Dist. LEXIS 3018, at *8-9 (E.D. Cal. Jan. 12, 2011) (former tenants lacked standing to seek prospective injunctive and declaratory relief, despite past injury); *Am. Patriots Advocating for Disabled Rights, Inc. v. Budget Suites of Am. LLC*, No. 09-CV-01528-KJD-GWF, 2011 U.S. Dist. LEXIS 33954, at *5-6 (D. Nev. Mar. 29, 2011) (former short-term tenants lacked standing to sue landlord, despite vague allegations that they someday intended to return to property).

Finally, the Complaint seeks a declaratory judgment that Thompson "was involuntarily displaced based on HUD's action or inaction as described herein." Compl. at 47. This plea for relief targets HUD, not Commissioner Towns. But even it were construed to seek relief against Commissioner Towns, any such claim is barred by the doctrine of sovereign immunity because it

17

seeks retroactive relief. "[T]he Supreme Court has held that the Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law." *Rothenberg v. Stone*, 234 F. Supp. 2d 217, 221 (E.D.N.Y. 2002) (citing *Green v. Mansour*, 474 U.S. 64, 65-66 (1985)).

## III.   *RES JUDICATA* AND COLLATERAL ESTOPPEL BAR PLAINTIFFS' CLAIMS

Even if this court had subject matter jurisdiction, the claim against Commissioner Towns would be subject to dismissal based on *res judicata* and collateral estoppel.

### A. *Res Judicata* Precludes Plaintiffs' Claim Against Commissioner Towns

*Res judicata* (claim preclusion) bars a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (internal citations omitted). *Accord Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

"When a claim has been fully litigated, the doctrine of claim preclusion generally bars the future litigation both of that claim and of any closely related claims." *Genger v. Sharon*, No. 10 Civ. 4506 (SAS), 2012 U.S. Dist. LEXIS 165220, at *8 (S.D.N.Y. Nov. 19, 2012) (quoting *Acosta-Pelle v. New Century Fin. Servs., Inc.*, No. 09 Civ. 2631, 2009 U.S. Dist. LEXIS 118701, at *2 (S.D.N.Y. Dec. 17, 2009)). "Res judicata bars 'subsequent litigation of any ground of recovery that was available in [a] prior action, whether or not it was actually litigated or determined.'" *Harding v. Paramount Pictures*, No. 12 Civ. 66 (DAB)(HBP), 2013 U.S. Dist. LEXIS 54217, at *14 (S.D.N.Y. Jan. 16, 2013) (internal citations omitted).

18

Under this "transactional approach," followed by both New York State and federal courts, "Once a claim is brought to final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."[4] *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (quoting *In re Derek Josey*, 9 N.Y.3d 386, 389-90, 849 N.Y.S.2d 497, 499 (2007)).

Significantly for this motion, "[a] judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, *a judgment on stipulation or agreement, or a summary judgment.*" *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012) (emphasis added). *Accord Harding*, 2013 U.S. Dist. LEXIS 54217, at *16. In *Harding*, the District Court held that a prior New York State action was "adjudicated on the merits" based on a stipulation of discontinuance. *Id.* at *17. *See also id.* (citing *NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F. 3d 792, 78 (2d Cir. 1997) (A "discontinuance with prejudice is deemed a final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted in the suit"); *Allianz Ins. Co. v. Lerner*, 296 F. Supp. 2d 417, 421 (E.D.N.Y. 2003) ("A stipulation of discontinuance with prejudice has the same effect as a final judgment on the merits for res judicata purposes") (internal citations omitted); *Fifty CPW Tenants Corp. v. Epstein*, 16 A.D.3d 292, 294, 792 N.Y.S.2d 58, 60 (1st Dep't 2005) (stipulation of discontinuance with prejudice is a judgment on the merits for purposes of res judicata)).

Plaintiffs' claim against Commissioner Towns is barred by *res judicata.* The essence of Plaintiffs' claim is that under federal law, the Lease – particularly the additional rent clause – is

---

[4] "[T]here is no discernible difference between federal and New York law concerning res judicata and collateral estoppel." *Algonquin Power Income Fund v. Christine Falls of New York*, 362 Fed. Appx. 151, 154 (2d Cir. 2010).

19

invalid and unenforceable. That was precisely the argument that Plaintiffs raised, and either lost or waived in a settlement, in the prior Yonkers City Court proceedings. Berg Decl., Ex. 23.

First, there is no question that every Plaintiff is bound by a state-court judgment or settlement. As discussed in Section I, *supra*, Thompson, Guerrero, and Romero are bound by Judge Martinelli's June 11, 2012 Decision and Order, which expressly rejected their challenges to the additional rent clause. Compl. ¶ 114 & Ex. G. Hernandez, Sparaci, Thiam, and Poku entered into settlements with the Landlord, agreeing to pay electric utility charges as additional rent. *See* Compl. ¶¶ 178, 206 & 295; Berg. Decl., Exs. 14, 16, 19, 20 & 22.

Second, it is beyond dispute that the Plaintiffs were parties to the prior state court eviction proceedings. *See* Compl. ¶¶ 156, 177, 205, 230, 272, 294.

Third, each Plaintiff's claim against Commissioner Towns was, or could have been, litigated in the prior state-court proceedings. Plaintiffs defended the non-payment proceedings in state court by claiming that under federal law, utilities could not be charged as additional rent, and the total rent plus additional rent could not exceed the alleged federal maximum. *See* Compl., Ex. G. The state court expressly rejected these contentions and upheld the validity of the additional rent provision. *Id.* Plaintiffs cannot relitigate their claims in this forum.

It makes no difference that this action is couched in terms of Section 1983 and seeks, in part, prospective injunctive relief. *See Giannone*, 548 F.3d at 194 (holding that later "claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy").

It is also immaterial that Plaintiffs raised the purported invalidity of the Lease as a defense rather than an affirmative cause of action in state court. The Second Circuit's holding in *Angell v. U.S. Army Corps of Engineers*, 149 Fed. Appx. 34 (2d Cir. 2005), establishes that *res*

20

*judicata* precludes a claim that was raised, or could have been raised, as a defense in a prior proceeding. Initially, the government sued Angell for constructing two floats in a canal without obtaining a federal permit. Angell unsuccessfully defended the case, claiming no permit was required because the canal was not a navigable waterway of the United States. Angell subsequently sued the Army Corps of Engineers, seeking a declaratory judgment that the canal was not a navigable waterway. The Second Circuit held that the second action was barred by *res judicata*. *Angell*, 149 Fed. Appx. at 36. *See also Genova v. Town of Southampton*, 776 F.2d 1560, 1561 (2d Cir. 1985) (holding that *res judicata* precluded § 1983 claims even assuming, as plaintiff claimed, that he had been in a "defensive posture" in prior state court proceedings).

### B. <u>Collateral Estoppel Precludes Plaintiffs' Claim Against Commissioner Towns</u>

Plaintiffs' claim against Commissioner Towns is also barred by collateral estoppel (issue preclusion), which prevents "a plaintiff from relitigating an issue that has already been fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003)). Collateral estoppel bars the claims of Thompson, Guerrero, and Romero because they expressly litigated and lost their challenge to the Lease in state court. *See* Compl., Ex. G, at 3-6 (rejecting argument that "there is no valid lease agreement obligating [tenants] to pay for electric charges and that the electric charges do not constitute rent or additional rent under the federal laws, rules, and regulations"). Moreover, Plaintiffs have taken the position that the state court's rationale and holding apply equally to all Plaintiffs. *See* Berg Decl., Ex. 23, ¶ 10. Thus, each Plaintiff's claim against Commissioner Towns is barred by collateral estoppel.

### IV.   THE COURT MUST ABSTAIN TO THE EXTENT THAT PLAINTIFFS ARE STILL LITIGATING LANDLORD-TENANT DISPUTES IN STATE COURT

The Complaint suggests that one or more Plaintiffs may be embroiled in ongoing state court litigation with the Landlord for failing to pay rent and electricity charges as stipulated in

21

their prior settlement agreements. *See, e.g.*, Compl. ¶ 248 (alleging that a new eviction case was brought against Thiam in July 2013); *id.* ¶ 274 (alleging that an eviction notice was served on Romero in November 2013). These proceedings have no bearing on the application of *Rooker-Feldman* and *res judicata*, which mandate dismissal based on the prior state-court judgments.

Moreover, to the extent that any Plaintiffs are relitigating the additional rent clause in state court, this Court (assuming it has jurisdiction) should abstain in deference to the ongoing state court proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971); *O'Shea v. Littleton*, 414 U.S. 488 (1974). The *Younger* doctrine recognizes "the dignity of states as co-equal sovereigns in our federal system," and "prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings' so as to avoid unnecessary friction." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)).

Abstention is particularly appropriate in this case because Plaintiffs have intentionally invoked this federal action as purported grounds for seeking a stay of all eviction proceedings in Yonkers City Court. *See* Berg Decl., ¶ 29 & Ex. 23. Interfering with ongoing state court proceedings is not a side effect; it is Plaintiffs' primary purpose in pursuing this litigation. But that is precisely the kind of meddling with state proceedings that *Younger* prohibits.

"A federal court must abstain based on *Younger* when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal Constitutional claims." *Harvey v. 320 Owners Corp.*, No. 07 Civ. 6763 (LAP), 2009 U.S. Dist. LEXIS 61007, at * (S.D.N.Y. Apr. 20, 2009) (citing *Spargo*, 351 F.3d at 75 (citing *Diamond "D" Constr.*, 282 F.3d at 198)). To the extent that any Plaintiffs are currently defending eviction proceedings in

Yonkers City Court, this Court must abstain because landlord-tenant law is an important area of state policy, and because the New York State courts are fully capable of considering any defenses to eviction based on Plaintiffs' claim that the Lease violates federal law or their constitutional rights. *See* Compl. ¶¶ 327-30 (asserting claim based on Section 1983).

In *Harvey*, Chief Judge Preska abstained from hearing a Section 1983 claim brought by co-op owners against their co-op board. The *Younger* elements were satisfied because: "There is an ongoing proceeding in the New York state courts that implicates the constitutionality of certain laws of the state of New York – undoubtedly an important state interest. The Plaintiffs may raise their Constitutional defenses to the Defendants' state claims in the state court proceedings." *Harvey*, 2009 U.S. Dist. LEXIS 61007, at *10. Similarly, Judge Gleeson abstained rather than interfere with state court proceedings "concern[ing] the disposition of real property and hence implicat[ing] important state interests." *Clark v. Bloomberg*, No. 10-CV-1263 (JG), 2010 U.S. Dist. LEXIS 35802, at *7 (E.D.N.Y. Apr. 12, 2010). The court noted that "there is no reason to doubt that the state proceedings provide Clark with an adequate forum to make the arguments he seeks to raise in this court." *Id. Accord Sasmor v. Powell*, No. 11-CV-4645 (KAM) (JO), 2013 U.S. Dist. LEXIS 47044, at *16 (Mar. 31, 2013) (dismissing action that was, "at bottom, a rehashing of [a] state court landlord-tenant dispute which should not be entertained in federal court") (internal citations omitted).[5]

---

[5] *Sasmor* noted that the New York Supreme Court has concurrent jurisdiction over eviction proceedings, and thus could have resolved both the landlord-tenant issues and any statutory or constitutional challenge. *Id.* at *11, n.4. *See also Randall's Island Aquatic Leisure, LLC v. City of New York*, No. 12 Civ. 6039 (CM), 2013 U.S. Dist. LEXIS 84569, at * (S.D.N.Y. June 13, 2013) (New York Supreme Court has concurrent jurisdiction and "was perfectly capable of entertaining Plaintiffs' Section 1983 claim").

23

## V.    PLAINTIFFS' CLAIM IS SUBJECT TO DISMISSAL ON THE MERITS

The Complaint fails to state a plausible claim for relief against Commissioner Towns.

*See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 556 (2007).  The only claim directed against Commissioner Towns

purports to allege a violation of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983.  In

particular, Plaintiffs allege that by promulgating the Lease including the additional rent clause,

Commissioner Towns "[1] has subjected or has caused Plaintiffs to be subjected to a deprivation

of their constitutionally protected property interest in their housing and in paying no more for

rent than is permitted by federal law and [2] has caused them to be denied equal protection of the

laws."  Compl. ¶ 328.

Plaintiffs' constitutional claims – the only claims they level against Commissioner Towns

– are frivolous.  There are no factual allegations remotely relevant to an equal protection claim.

Plaintiffs do not claim that they belong to a protected category or suffered disparate treatment,

much less intentional discrimination, compared with other tenants who also failed to pay their

rent and utilities.  *Cf. Ballard v. Rockville Centre Housing Authority*, 605 F.2d 1283 (2d Cir.

1979) (examining alleged discriminatory treatment of welfare tenants who were required to pay

higher rents than other tenants).

Nor have Plaintiffs alleged a plausible constitutional violation of their asserted "property

interest in their housing."  Plaintiffs do not claim that they faced eviction proceedings or were

ordered to pay their utility bills without due process of law.  *See* U.S. Const., Amend. XIV.  Nor

could they make such an allegation in good faith; the New York State courts not only provided a

forum in which to defend their asserted property rights, but repeatedly stayed Plaintiffs' evictions

to afford them every opportunity to retain their apartments. Thus, assuming Plaintiffs have a property interest, there is no plausible claim that Commissioner Towns infringed that interest.

CONCLUSION

This Court lacks subject matter jurisdiction over Plaintiffs' claim against Commissioner Towns. Alternatively, that claim should be dismissed based on the doctrines of *res judicata* and collateral estoppel, and to the extent it is premised on ongoing state court proceedings, pursuant to the *Younger* abstention doctrine. Finally, the Complaint fails to state a claim against Commissioner Towns on which relief can be granted. The Complaint should be dismissed with prejudice, and the Court should award such other and further relief as it deems proper.

Dated: January 9, 2014
      New York, New York

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By:
MICHAEL A. BERG
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
Tel: (212) 416-8651
Fax: (212) 416-6075
Michael.Berg@ag.ny.gov

*Attorneys for Defendant Darryl C. Towns*