UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
BRENDA THOMPSON, CARL SPARACI, MILRED
HERNANDEZ, VICTORIA GUERRERO, FATOUMATA
THIAM, DAVID ROMERO, and KWADWO POKU,

                                        Plaintiffs,

- against -

SHAUN DONOVAN, in his official capacity as Secretary
of the United States Department of Housing and Urban
Development, and the UNITED STATES DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT; and
DARRYL C. TOWNS, in his official capacity as
Commissioner/CEO of New York State Homes &
Community Renewal,

                                       Defendants.
-------------------------------------------------------------------x

**OPINION AND ORDER**

No. 13-CV-2988 (CS)

<u>Appearances</u>:

Mary Grace Ferone
Legal Services of the Hudson Valley
Yonkers, New York

Robert Hermann
Delbello Donnellan Weingarten Wise & Wiederkehr LLP
White Plains, New York
*Counsel for Plaintiffs*

Andrew Krause
Assistant United States Attorney
Southern District of New York
New York, New York

Patricia Sharin Flagg
Senior Trial Attorney
United States Department of Housing and Urban Development
Washington, D.C.
*Counsel for Defendants Shaun Donovan and the United States Department of Housing and Urban Development*

Michael A. Berg
Assistant Attorney General
State of New York
New York, New York
*Counsel for Defendant Commissioner Darryl C. Towns*

Seibel, J.

      Before the Court are the Motions to Dismiss of Defendants United States Department of

Housing and Urban Development ("HUD") and its Secretary, Shaun Donovan, (collectively,

"HUD"), and Darryl C. Towns, Commissioner of the New York State Division of Housing and

Community Renewal ("HCR"), (Docs. 33, 35).[1]  For the reasons set forth below, the Motions to

Dismiss are GRANTED.

## I. **BACKGROUND**

      For purposes of the instant Motions to Dismiss, I accept as true the facts, but not the

conclusions, as set forth in the SAC.

      Plaintiffs are current or former tenants of Riverview II Court ("Riverview"), an apartment

complex in Yonkers, New York, and recipients of government housing assistance in the form of

enhanced vouchers under Section 8 of the United States Housing Act of 1937, 42 U.S.C. §

1437f.  (SAC ¶¶ 20-27, 74.)[2]  Riverview, although privately owned, receives federal mortgage

interest assistance under Section 236 of the National Housing Act of 1934, 12 U.S.C. § 1715z-1,

in exchange for providing housing to low-income families.  (*Id.* ¶¶ 20, 38.)

---

[1] Plaintiffs sue Towns as "Commissioner/CEO of New York State Homes & Community Renewal."  (Second Amended Complaint ("SAC"), (Doc. 26), ¶ 1.)

[2] Plaintiff Brenda Thompson moved out of Riverview and into a federally subsidized building in Yonkers in January 2013.  (SAC ¶¶ 20, 126-21.)  The other Plaintiffs – Carl Sparaci, Mildred Hernandez, Victoria Guerrero, Fatoumata Thiam, David Romero and Kwadwo Poku – still reside in Riverview.  (*Id.* ¶¶ 163, 183, 212, 234, 252, 276.)  In addition to receiving Section 8 assistance, which I will discuss below, six Plaintiffs have received additional grants through a state Home Electricity Assistance Program ("HEAP").  (*Id.* ¶¶ 147, 174, 223, 242, 263, 287.)  Ms. Hernandez applied but was "eligible for no more than $1 of HEAP assistance."  (*Id.* ¶ 198.)

Plaintiffs allege that their landlord, Riverview II Preservation L.P. ("Landlord"), has submetered utilities in their building and, pursuant to a lease form mandated by HCR ("HCR Lease" or "Lease"), has charged those utilities as "'additional rent,'" which Plaintiffs have been unable to pay, causing their eviction or putting them at risk for eviction. (*Id.* ¶¶ 8, 20.) Plaintiffs bring this action not against Landlord, but against HUD and HCR Commissioner Towns. (*See generally* SAC.)

A. <u>Section 236 Mortgage Assistance and Section 8 Housing Vouchers</u>

Section 236 of the National Housing Act of 1934 provides that the "Secretary [of HUD] is authorized to make . . . periodic interest reduction payments on behalf of the owner of a rental housing project designed for occupancy by lower income families." 12 U.S.C. § 1715z-1(a). Under Section 236, HUD may continue to make these interest reduction payments for a mortgage that has been refinanced if the owner "enters into such binding commitments as the Secretary may require . . . to ensure that the owner will continue to operate the project in accordance with all low-income affordability restrictions." *Id.* § 1715z-1(e)(2). This process – whereby the interest reduction payments are separated from the original mortgage – is known as "decoupling." (SAC ¶ 77.) The Secretary of HUD is further authorized to enter into contracts with local or state entities, such as HCR, to "monitor[] and supervis[e] . . . the management" of these Section 236 arrangements. *See* 12 U.S.C. § 1715z-1(p).

Section 8 of the United States Housing Act of 1937 is a federal housing assistance program that provides rental assistance to eligible low-income tenants who reside in units owned by participating landlords, including the tenant-based Section 8 Housing Choice Vouchers ("HCV") program at issue in this case. *See* 42 U.S.C. § 1437f(a), (o). In the HCV program, an eligible family is issued a voucher by a state or local public housing agency ("PHA"), which

administers the Section 8 program in a particular geographic area.  *See id.*  The eligible family

uses the voucher to rent a dwelling unit from a landlord that is willing to participate in the

Section 8 program.  *See id.*  The PHA has a Housing Assistance Payment ("HAP") contract with

the landlord on behalf of the family.  *Id.* § 1437f(c), (o)(7).  The eligible family in turn pays a

portion of its income as rent directly to the landlord.  HUD provides funding to the PHA for its

HAP contract payments to the landlord.  *Id.* § 1437f(b).

   B. <u>HCR Lease and Riverview Decoupling</u>

   On October 18, 2006, HCR issued a directive requiring all federally assisted housing

companies, including Landlord, to use a lease in the form of the HCR Lease.  (SAC ¶ 104; *see id.*

Ex. A, at 1.)  At issue in this case is Section 15 of the HCR Lease, which deems submetered

electricity charges to be "additional rent" under the Lease.  (*Id.* Ex. A § 15.)  This denomination

is consequential, because ordinarily the remedy for non-payment of a utility bill under New York

law is to shut off the service, *see* N.Y. Pub. Serv. Law § 32(2)(a) (McKinney 2006), but if the

utility cost is considered to be rent, a landlord may pursue eviction for non-payment.  Thus, a

tenant who fails to pay electric utilities may be evicted for non-payment of rent, even though

(according to Plaintiffs) such an outcome is contrary to federal law.  (SAC ¶ 119.)  Landlord

adopted the HCR Lease and used the Lease to enter into landlord-tenant relationships with

Plaintiffs.  (*Id.* ¶ 105.)

   From late 2007 to early 2008, Landlord refinanced its original Section 236 mortgage for

Riverview.  (*Id.* ¶ 76.)  After the refinancing was complete, Landlord applied to HUD for

permission to decouple the project's Section 236 subsidies from the original mortgage.  (*Id.* ¶

77.)  By letter dated April 10, 2008, HUD approved Landlord's plan on the condition that "(1) no

tenant would be involuntarily displaced as a part of the decoupling transaction, and (2) Landlord

would execute a Section 236 use agreement." (*Id.* ¶ 78.) Following this approval, HUD entered into an Agreement for Interest Reduction Payments ("IRP Agreement") that completed the decoupling transaction and provided that Landlord would continue to receive interest reduction payments after the mortgage refinancing. (*Id.*; *see id.* Ex. B.)[3] HCR became HUD's "contract administrator" and "state supervising agency" with respect to Riverview. (*Id.* ¶ 31.)

In connection with this refinancing, Landlord requested, by petition dated April 16, 2008, that the New York State Public Service Commission ("PSC") allow it to submeter electricity for its tenants in Riverview. (*Id.* ¶ 81.) The PSC approved the application on August 27, 2008, after which the Riverview Tenants Association ("Association") applied to the PSC to stay or vacate the approval arguing, among other things, that submetering would result in tenant eviction because the HCR Lease deemed electric utilities charges as "additional rent." (*Id.* ¶¶ 82-83.) The PSC allowed Landlord to consider the electricity payment as "additional rent" in light of the fact that Landlord did not have the equipment to terminate electrical service to individual units and thus would have no remedy for non-payment if it could not treat the electricity bill as additional rent. (Berg Decl. Ex. 2, at 27.)[4] The PSC further required that before any such eviction proceeding, Landlord had to provide the same procedural protections required under state law for the termination of utility service. (*Id.*)

By letter dated September 15, 2009, the Association argued to HUD that submetering violated the HUD Handbook, which states in Section 6-4(B) that Landlord, as a participant in the Section 236 program, is required to use the HUD Model Lease (not the HCR lease). (SAC ¶¶

---

[3] As a result of this decoupling, Plaintiffs were eligible for Section 8 Enhanced Vouchers. (SAC ¶¶ 63, 80.) The difference between regular Section 8 vouchers and enhanced Section 8 vouchers is irrelevant for present purposes.

[4] "Berg Decl." refers to the Declaration of Michael Berg in Support of Motion of Darryl C. Towns to Dismiss the Second Amended Complaint. (Doc. 37.)

84-85; *see id.* Ex. C.)[5]  By letter dated February 16, 2010, HUD rejected the Association's

argument, concluding that Landlord had not violated the terms of the HUD Handbook but rather

had engaged in an acceptable amendment, and that submetering would not result in tenant

eviction.  (*Id.* ¶¶ 86-87; *see id.* Ex. D.)  HUD nonetheless postponed any further submetering

until Landlord complied with all tenant notice requirements, and indicated that "it would

continue to monitor events at Riverview [] to ensure that the Section 236 decoupling did not

result in tenant displacement."  (*Id.* ¶¶ 88-89; *see id.* Ex. D, at 8.)  In September and October

2010, HCR advised HUD of Landlord's compliance with the notification procedures and

recommended that HUD approve the submetering conversion at Riverview.  (*Id.* ¶ 93; *see id.* Ex.

E, at 3-4.)  HUD in turn approved the submetering at Riverview, (*see id.* Ex. H, at 4), and

approved utility allowances – or reductions in rent – for tenants in Riverview as a result of the

submetering, (*Id.* ¶ 94). [6]  Landlord resumed submetering in or around December 2010.  (*Id.* ¶

95.)

     C. <u>Yonkers City Court Proceeding</u>

     Submetering is designed to save energy.  (*Id.* Ex. E, at 5.)  The tenant's allowance is

calculated based on typical utility costs of energy conservative households in the locality.  *See* 24

C.F.R. § 982.517.  "If a tenant's utility bill exceeds the allowance, the tenant must make up the

difference; if the allowance exceeds the bill, the difference may be pocketed." *McDowell v.*

*Phila. Hous. Auth.*, 423 F.3d 233, 236 (3rd Cir. 2005).

---

[5] Plaintiffs seem to overstate the Handbook's requirement.  Section 6-4(B) states that landlords "must use leases that are in acceptable form to HUD," and that in practice that will be the HUD Model Lease.  The Handbook further provides, in Sections 6-4(D), 6-11 and 6-12(B), that HUD or the Contract Administrator may approve modifications to leases, but that amendments need not be approved.  As far as the Court can tell, the HUD Model Lease does not address submetered utilities either way.  It refers only to utilities for which the tenant pays the utility company directly and to utilities included in rent.  (SAC Ex. C, at 3.)

[6] The utility allowance rates were as follows:  $114 for a one-bedroom apartment, $143 for a two-bedroom, $173 for a three-bedroom; and $214 for a four-bedroom.  (SAC ¶ 94.)

Plaintiffs here fell behind on their utility payments.  In 2011, Landlord filed in Yonkers City Court a petition to evict three plaintiffs – Brenda Thompson, Victoria Guerrero and David Romero – for non-payment of submetered electricity charges.  (SAC ¶¶ 156, 230, 272.)  These eviction proceedings were consolidated with several others for motion practice under the caption *Riverview II Preservation LP v. Roberts*.  (*See id.* Ex. G ("Yonkers City Court Decision").)  The tenants moved to dismiss the petitions, and Landlord cross-moved for summary judgment.  (*See id.*)  Among the arguments advanced by Plaintiffs was that treating electricity charges as additional rent, per the HCR Lease, violated federal laws, rules and regulations.  (*See id.* Ex. G, at 3.)  On June 11, 2012, Judge Martinelli of the Yonkers City Court denied the tenants' motion and granted Landlord's motion.  (*See id.* Ex. G, at 7.)  Judge Martinelli first held that submetering utilities was lawful, and in doing so, afforded substantial deference to the rulings and regulations of federal agencies, such as PSC, HUD and HCR.  (*See id.* Ex. G, at 4-6.)  Judge Martinelli further concluded that the HCR Lease "explicitly contemplates sub-metering, whereby the landlord would reduce the tenant's rent by the applicable utility allowance and begin charging the tenant for his/her electricity consumption."  (*See id.* Ex. G, at 6.)

Thompson, Guerrero and Romero filed a notice of appeal with the Appellate Term of the New York Supreme Court, but withdrew the appeal pursuant to a settlement they reached with Landlord.  (*See* Berg Decl. Ex. 12.)  The Stipulation of Settlement was signed in November 2012, and so ordered by Judge Martinelli on April 3, 2013.  (SAC ¶ 156; *see* Berg Decl. Ex. 13 ("Stipulation of Settlement").)  In the Stipulation of Settlement, the tenants expressly waived the right to appeal the decision of the Yonkers City Court, signed deferred payment agreements, in which they agreed to pay their electricity arrears over time, and promised to stay current with future rent and additional rent payments.  (*See* Stipulation of Settlement §§ 3, 5, 8.)  Subsequent

to the settlement, however, Thompson was again unable to pay her submetered electricity bills, and she alleges that she was "compelled to move out [of Riverview] to ensure that she and her family [were] able to receive adequate heat without being subjected to eviction."  (SAC ¶¶ 157, 159, 161.)

Landlord initiated eviction proceedings against the other Plaintiffs as well, (*id.* ¶¶ 177, 205, 230, 248, 272, 294), although these Plaintiffs – rather than proceeding through motion practice – directly entered into stipulations of settlement whereby they agreed, among other things, to pay future utility charges as additional rent, (*id.* ¶¶ 178, 206, 231, 273, 295; *see* Berg Decl. Exs. 19, 20).

While the Yonkers proceeding was still pending, Plaintiffs' counsel, on May 8, 2012, wrote to HUD regarding Plaintiffs' concern that submetering was resulting in tenant displacement at Riverview and requesting HUD's intervention in the matter.  (SAC ¶¶ 112-13; *see id.* Ex. F.)  Plaintiffs' counsel expressed concern over Judge Martinelli's forthcoming decision on whether utilities are "rent" under the relevant federal statutes, and whether the HUD Model Lease permits utilities to be defined as "rent," because Judge Martinelli had intimated that, absent a statement to the contrary from HUD or HCR, he was inclined to allow Landlord to recover utility payments as rent, regardless of whether they exceeded the total limits of tenant payment.  (*See id.* Ex. F, at 3.)  Accordingly, Plaintiffs' counsel "petition[ed]" HUD to "[i]nvestigate the submetering" at Riverview "to determine whether it has resulted in displacement;" "[i]ssue a clarification regarding whether utilities are 'rent' and, even if so, whether the statutory limits on 'rent' govern utilities;" and "issue an order prohibiting [L]andlord from evicting any tenants at Riverview [] or commencing eviction proceedings . . . pending [HUD's] investigation and determination."  (*See id.*)

On June 11, 2012, Plaintiff's counsel sent an e-mail to HUD attaching a copy of the Yonkers City Court decision.  (*Id.* ¶ 116; *see id.* Ex. H.)  Counsel sent a follow-up letter on June 13, 2012, apparently in response to a discussion counsel had with a HUD representative the previous day, in which counsel "renew[ed] and elaborate[d] their request for an as-applied investigation of submetering at Riverview . . . , an order staying evictions pending such an investigation, and a determination that electricity is not 'rent' or, even if so, is subject to rent limits under federal law."  (*Id.*)  Plaintiffs allege that, "[t]o date, HUD has not answered" their request.  (*Id.* ¶ 119.)

~~~~~~~~~~~~~~

Plaintiffs initiated this action by filing a complaint on May 3, 2013, (Doc. 1), which they have twice amended, (Docs. 13, 26).  Plaintiffs seek declaratory and injunctive relief against HUD and Commissioner Towns.  (SAC ¶ 1.)[7]

Plaintiffs allege that HUD has violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, 701 *et seq.*, by failing to take sufficient action in response to Plaintiffs' concerns about the HCR Lease.  Specifically, Plaintiffs allege that HUD has (1) failed to issue a determination as to whether utilities may be considered "additional rent" under federal law, and if so, whether the "additional rent" when added to regular rent may exceed federal statutory rent limits; (2) failed to investigate Plaintiffs' complaints regarding Riverview; (3) improperly

---

[7] Plaintiffs do not name HCR as a defendant in their SAC, but seem to suggest, in their memorandum of law, that they are seeking relief against HCR as well.  (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Second Amended Complaint ("Ps' Opp."), (Doc. 39), 1 (referring to Darryl Towns "and the agency he heads" as "collectively 'HCR'").)  To the extent Plaintiffs purport to bring a claim against HCR, which is a state agency, that claim is barred by the Eleventh Amendment.  *See Alston v. Sebelius,* No. 13-CV-4537, 2014 WL 4374644, at *10 (E.D.N.Y. 2014) (claims against HCR barred by Eleventh Amendment immunity); *see also Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir. 2009) (Eleventh Amendment immunity "extends beyond the states themselves to state agents . . . such as a state agency.") (internal quotation marks and citation omitted).

9

allowed HCR to use a lease that is not the HUD Model Lease and, in doing so, failed to supervise and administer the management of Riverview in compliance with federal law; and (4) failed to investigate whether submetering has resulted in tenant displacement at Riverview. (SAC ¶¶ 303-26.)

Plaintiffs allege that Commissioner Towns has violated 42 U.S.C. § 1983 by directing Landlord to use the HCR Lease with the "additional rent" clause.  (*Id.* ¶ 327-30.)  Specifically, they assert that Commissioner Towns has subjected Plaintiffs to "a deprivation of their constitutionally protected property interests in their housing and in paying no more for 'rent' than is permitted by federal law and has caused them to be denied equal protection of the laws." (*Id.* ¶ 328.)

Finally, Plaintiffs request a preliminary injunction preventing the taking of any steps to evict Plaintiffs or other tenants from Riverview on the ground of non-payment of electricity or electric utilities as "rent."  (*Id.* ¶ 331-39.)[8]  They also seek a declaration from this Court that Plaintiff Thompson was involuntarily displaced based on "HUD's action or inaction."  (*Id.* at 47.)

HUD and Commissioner Towns move to dismiss the Second Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or, in the alternative, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Docs. 33, 35.)

---

[8] Plaintiffs do not specify in their SAC whom they seek to enjoin, (*see* SAC ¶¶ 331-39), but clarified at a court conference that I should order HCR or HUD to issue an interim policy that, pending resolution of this case, landlords should not evict tenants, including Plaintiffs, under the HCR Lease.  (*See* Declaration of Gregory E. Louis in Opposition to Defendants' Motions to Dismiss the Second Amended Complaint ("Louis Decl."), (Doc. 38), Ex. 1 ("7/9/13 Transcript"), at 16-17.)  Plaintiffs never filed a separate motion for a preliminary injunction, however, and thus I need not consider Plaintiffs' request for a preliminary injunction.  In any event, because I find Plaintiffs' dismissal appropriate, the request for an injunction is moot.

## II. <u>LEGAL STANDARDS</u>

### A. <u>Rule 12(b)(1)</u>

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009). "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Id.* (citation omitted) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* (citations and internal quotation marks omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks, citations, and alteration omitted), *aff'd on other grounds*, 561 U.S. 247 (2010). When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

B. Rule 12(b)(6)

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

12

### III.  PLAINTIFFS' CLAIMS AGAINST HUD

A. Judicial Review under the APA

Plaintiffs seek relief against HUD in Counts I, II, III, and IV of their Second Amended Complaint pursuant to Section 706 of the APA.  The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702. This provision permits review of "final agency action for which there is no other adequate remedy in a court."  *Id.* § 704.  "'[A]gency action' includes . . . [the] failure to act."  *Id.* § 551(13); *see Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).

Section 706(1) empowers a district court to "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).  A plaintiff's challenge to an agency's failure to act is reviewable under the APA "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton*, 542 U.S. at 64 (emphasis in original). Even then, a court may only "compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act."  *Id.*  (internal quotation marks omitted).  Review under the APA is unavailable where:  (i) "statutes preclude judicial review;" or (ii) "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see NRDC v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006).  These exceptions are construed narrowly and apply only if there is "clear and convincing evidence of legislative intention to preclude review." *Johnson*, 461 F.3d at 171 (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)); *see Abbott Labs. v. Gardner*, 387 U.S. 136, 141 & n.2 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  That standard is met if "intent to preclude judicial review is fairly discernable in the statutory scheme."  *Johnson*, 461 F.3d at 172

13

(quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 350-51 (1984)).  Such an intent exists

when a statute is drawn so as to provide "no meaningful standard against which to judge the

agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  In that event,

Congress "can be taken to have committed the decisionmaking to the agency's judgment

absolutely."  *Id.* (internal quotation marks omitted).[9]

    B. Discussion

        1. *Failure to Issue a Determination*

    Plaintiffs' first claim for relief is that HUD has violated Section 706 of the APA by

failing to issue a determination as to "whether utilities are 'rent' within the meaning of Section

236 . . . and Section 8 . . . and, if so, whether limits on rent under such [federal laws] restrict the

amount of utilities that a participant in the Section 236 and Section 8 programs can be charged as

'additional rent.'"  (SAC ¶¶ 303, 308.)  HUD responds that it is under no obligation –

generalized or specific – to issue interpretations of the statutes or regulations under which it

operates, and thus Plaintiffs' first claim must be dismissed.  (*See* HUD's Mem. 14-15.)  Plaintiffs

respond by identifying three purported "sources for HUD's duty" to make a determination:  (1)

Section 555(e) of the APA; (2) HUD's regulation at 2 C.F.R. § 180.600; and (3) HUD's "very

purpose and practice, as supported by jurisprudence under Section 706."  (Ps' Opp. 35.)

    Section 555(e) of the APA provides that "[p]rompt notice shall be given of the denial . . .

of a written application, petition, or other request of an interested person made in connection

---

[9] HUD acknowledges, and I agree, that "it is uncertain in light of recent Supreme Court precedent whether these threshold limitations are truly jurisdictional or are rather essential elements of the APA claims for relief."  (*See* Memorandum of Law of Defendants Shaun Donovan and the United States Department of Housing and Urban Development in Support of their Motion to Dismiss the Second Amended Complaint as against the HUD Defendants ("HUD's Mem."), (Doc. 34), 8 n.1 (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008)).)  I need not resolve this question, however, because whether viewed under Rule 12(b)(1) or Rule 12(b)(6), Plaintiffs' claims against HUD must be dismissed.

with any agency proceeding," and that "notice shall be accompanied by a brief statement of the grounds for denial."  5 U.S.C. § 555(e).  Plaintiffs argue that the transition to submetering was part of Landlord's Section 236 decoupling, which was an "agency proceeding" within the meaning of Section 551(12) of the APA, *see* 5 U.S.C. § 551(12) (defining "agency proceeding" as "an agency process" relating to "rule making," "adjudication," or "licensing"), and because Plaintiffs' request stems from this decoupling, HUD must, under Section 555(e), respond to Plaintiffs' demand.  But Section 555(e) has no bearing on the instant case because HUD has not "deni[ed]" any request of Plaintiffs.  HUD may have "failed" to act as Plaintiffs requested – but "[a] 'failure to act' is not the same thing as a 'denial.'"  *Norton*, 542 U.S. at 63.  Moreover, HUD's failure to determine whether or not utilities may be charged as rent is too attenuated from the long-concluded Section 236 decoupling, and thus the obligations that arise under Section 555(e) do not apply here.[10]  That Plaintiffs' request has some but-for historical connection to a past agency proceeding cannot be enough to meet the requirement that the request be made "in connection with" an agency proceeding.

Plaintiffs' reliance on HUD's regulation at 2 C.F.R. § 180.600 is equally misplaced. Section 180.600, as set forth by the Office of Management and Budget ("OMB"), provides that "[w]hen Federal agency officials receive information from any source concerning a cause for suspension or debarment, they will promptly report it and the agency will investigate."  2 C.F.R. § 180.600.  HUD has adopted the OMB guidance in Section 180.600 as part of its "policies, procedures, and requirements for nonprocurement debarment and suspension."  *See* 2 C.F.R. §§ 2424.10, 2424.30.  Plaintiffs argue that HUD was under an obligation, pursuant to Section

---

[10] Moreover, the cases cited by Plaintiffs in support of this argument are distinguishable.  These cases largely involve situations where HUD took some action and was being challenged for its failure to issue an explanation for that decision.  *See, e.g.*, *Remmie v. Mabus*, 898 F. Supp. 2d 108, 113 (D.D.C. 2012) (agency was required to issue explanation following denial of petition for retroactive promotion and reinstatement).

180.600, to issue a legal interpretation on the issue of additional rent, but they point to nothing in the regulation that mandates such an action. Even assuming this section mandated HUD to investigate malfeasance, it hardly requires HUD to provide interested parties with legal interpretations upon request. Moreover, Plaintiffs expressly state that "they did not request that HUD suspend or debar Landlord." (*See* Ps' Opp. 38.) As a result, this section seems entirely inapplicable.[11]

Plaintiffs finally point to HUD's enabling act, 42 U.S.C. § 3531, as a source of duty for HUD to issue a determination as to whether submetering charges are impermissible "additional rent." (*See* Ps' Opp. 38-40.) But HUD's enabling act – which is a general statement of the reasons and policies behind the creation of the HUD, *see* 42 U.S.C. § 3531 – fails to mandate that HUD take discrete action, which is required to subject agency action to review under Section 706(1) of the APA. *See Norton*, 542 U.S. at 64. In sum, HUD is under no obligation to issue a legal interpretation and I must dismiss Plaintiffs' first claim for relief.[12]

## 2. *Failure to Investigate Plaintiffs' Complaints*

Plaintiffs' second claim for relief is that HUD has violated Section 706 of the APA by failing to investigate documented violations of the Section 236 and Section 8 programs. (SAC ¶¶ 313, 317-19.) Plaintiffs ask the Court to order that "HUD . . . respond to tenants at Riverview II Court's requests for an as-applied investigation of submetering." (*Id.* at 46.) Once again,

---

[11] Plaintiffs cite *Blackshear Residents Org. v. Hous. Auth. of Austin*, 347 F. Supp. 1138 (W.D. Tex. 1972), in support of their argument, (*see* Ps' Opp. 37), but *Blackshear* does not suggest that HUD was required to issue a legal interpretation upon Plaintiffs' request. If anything, *Blackshear* addresses an agency's obligation to investigate, *see Blackshear*, 347 F. Supp. at 1144 (Plaintiffs were entitled to "an investigation of their complaint and a decision by the agency as provided by 24 C.F.R. § 1.7"), which could relate to Plaintiffs' second claim for relief, but Section 1.7 imposes a specific duty to investigate complaints of discrimination, which has no bearing here.

[12] Plaintiffs also argue that HUD's failure to make a determination is unreasonable delay. (*See* Ps' Opp. 40-42.) But "a delay cannot be unreasonable with respect to action that is not required," *Norton*, 542 U.S. at 63 n.1, so I reject this argument as well.

Plaintiffs' point to 2 C.F.R. § 180.600 as the source of HUD's duty to investigate, but I agree with HUD that Section 180.600 does not impose on HUD a specific obligation to take discrete action, which is required to bring a claim under Section 706(1) of the APA.  *See Norton*, 542 U.S. at 64.  Moreover, Plaintiffs omit the final sentence of Section 180.600, which provides that "[t]he officials refer the question of whether to suspend or debar you to their suspending or debarring official for consideration, if appropriate," 2 C.F.R. § 180.600, and thus suggests that the obligations that arise under Section 180.600 are discretionary and not subject to review under Section 706.

I recognize that Section 180.600 includes the phrase "agency will investigate," but this unadorned language cannot be read to mandate any particular inquiry beyond that which HUD has already undertaken.  Further, even if it could be so interpreted, Section 180.600 provides no standard the agency is to follow, leaving "no law [for a reviewing court] to apply."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Rather than imposing on HUD a duty to take specific action, the regulation leaves the matter entirely to HUD's discretion, and thus cannot be a basis for APA review.  *See Norton*, 542 U.S. at 64.

More generally, Plaintiffs' argument that an investigation is warranted overlooks the "presumption *against* judicial review of agency decisions that involve whether to undertake investigative or enforcement actions."  *Am. Disabled for Attendant Programs Today v. U.S. Dep't of Hous. & Urban Dev.*, 170 F.3d 381, 384 (3d Cir. 1999) (emphasis in original) (citing *Chaney*, 470 U.S. at 838).  As the Supreme Court explained in *Chaney*, "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," and "[t]he agency is far better equipped than the courts to deal with the

many variables involved in the proper ordering of its priorities." *Chaney*, 470 U.S. at 831-32.

This presumption of unreviewability may be rebutted, however, "where the substantive statute

has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at

832-33.  But, as noted, Plaintiffs are unable to identify a statute that provides guidelines for how

HUD should exercise its investigatory powers, and thus I find that the second claim for relief

must be dismissed as well.[13]

### 3. *Failure to Administer its own Statutes and Regulations*

Plaintiffs' third claim for relief is that HUD has violated Section 706 by allowing HCR to

use the HCR Lease, which (they allege) includes a provision that violates federal law, instead of

using the HUD Model Lease.  (SAC ¶¶ 320-22.)[14]  Plaintiffs clarify in their memorandum of law

that "the third claim seeks anticipatory relief against HUD in the event it is claimed that HUD

has determined the 'additional rent' question in a manner that Plaintiffs contend contradicts the

statutes HUD enforces and its rules, policies, and practices."  (Ps' Opp. 35.)   Phrased as such, I

agree with HUD that this claim is not ripe for review and should be dismissed as premature.

(*See* HUD's Reply Mem. 9-10.)[15]

The ripeness doctrine "is drawn both from Article III limitations on judicial power and

from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v.*

---

[13] Plaintiffs unconvincingly deny that their "request for an investigation was really a plea for HUD[] to enforce its
regulations and procedures," which they seem to concede would be unreviewable under the APA.  (*See* Ps' Opp. 43-
44.)  Even accepting that as true, I still find the decision to investigate the alleged violations of federal law is
committed to HUD's sound discretion and thus not reviewable under the APA.

[14] The SAC also alleges that "HUD has violated its statutory duty to supervise and administer the management of
Riverview," (SAC ¶ 320), but Plaintiffs clarify that they are not claiming failure to supervise, (*see* Ps' Opp. 44)
("Plaintiffs challenge here not HUD's program supervision but its failure to adhere to its own regulations."), and
thus I need not consider this allegation.

[15] "HUD's Reply Mem." refers to Reply Memorandum of Law of Defendants Shaun Donovan and the United Stated
Department of Housing and Urban Development in Further Support of Their Motion to Dismiss the Second
Amended Complaint as Against the HUD Defendants.  (Doc. 41.)

*Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted).  Its purpose is to "ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III" and "prevent[ ] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).  Under the doctrine of prudential ripeness, a court must consider: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003).  In considering whether an issue is "fit" for judicial decision, a court "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.*

Plaintiffs' third claim for relief, as explained by their memorandum of law, is contingent on HUD first issuing a determination that Landlord is allowed, under federal law, to charge utilities as "additional rent."[16]  But HUD has yet to issue such a determination; in fact, Plaintiffs' first claim for relief complains about HUD's failure to make any determination on the subject. (*See* SAC ¶¶ 303-308.)  For this reason, Plaintiff's third claim for relief must be dismissed as unripe for review.[17]

---

[16] To be precise, Plaintiffs' claim is contingent on two future events – first, HUD agreeing to issue a determination on the question of "additional rent," and second, issuing a determination contrary to Plaintiffs' position on the issue.

[17] Even if the claim were ripe for review, I would dismiss Plaintiffs' third claim for relief.  Plaintiffs have failed to identify any law or regulation that requires HUD to correct any erroneous action by a Contract Administrator in general or the HCR Lease in particular (if, as Plaintiffs allege, the Lease violated federal law).  Notwithstanding Plaintiffs' assertions to the contrary, (Ps' Opp. 44), this seems to be a claim that HUD failed to supervise HCR when it modified its Lease for the tenants at Riverview, but such a failure (if it occurred) would not give rise to review of HUD's actions under the APA.  *See Junior v. City of New York, Hous. Pres. & Dev. Corp.*, 12-CV-3846, 2013 WL 646464, at *3-4 (S.D.N.Y. Jan. 18, 2013) (categorizing negligent supervision claim against HUD as arising under FTCA and rejecting APA's applicability).  And to the extent Plaintiffs seek discovery on HUD's precise role in the decision to approve the HCR Lease, (*see* Ps' Opp. 46), discovery only follows after Plaintiffs have satisfied the pleading requirements – jurisdictional or otherwise – to remain in federal court.  *See Angiulo v. Cnty. of Westchester*, 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) (under *Iqbal*, "a plausible claim

4. *Failure to Investigate Submetering*

Plaintiffs' final claim for relief against HUD is that it has failed to investigate whether submetering at Riverview has resulted in tenant displacement, and in doing so, "breached its statutory and regulatory duty to ensure that a Section 236 Decoupling does not result in tenant displacement under 12 U.S.C. § 4112(a)(2)(C) and 24 C.F.R. § 248.141." (SAC ¶¶ 323-24.)  But as HUD points out, (*see* HUD's Mem. 21), Sections 4112 and 248.141 do not provide a basis for APA review of HUD's alleged failure to act on Plaintiffs' complaints that tenants are being displaced at Riverview.  Rather, these Sections simply provide direction as to when HUD "may approve a plan of action" for the extension or termination of "low-income affordability restrictions on any eligible low-income housing."  *See* 12 U.S.C. § 4112(a) (criteria for approval of a plan of action for extension of restrictions); 24 C.F.R. § 248.141 (criteria for approval of a plan involving termination of restrictions).  They mandate no post-approval monitoring in the Section 236 context.

Plaintiffs' reliance on a February 16, 2010 letter from HUD, (SAC Ex. D), in which HUD stated that it would continue to monitor the developments and potential tenant displacement at Riverview after the decoupling process was complete, is misplaced.  (*See* Ps' Opp. 47.)  That letter did not obligate HUD to take any discrete action or constitute a forfeiture of its discretion to investigate or not, as it sees fit.  Plaintiffs cite *Vincent v. Money Store*, 736 F.3d 80 (2d Cir. 2013), where the Second Circuit observed that it would consider the Federal Trade Commission's ("FTC") informal opinions as persuasive authority (receiving only "respectful consideration" rather than *Chevron* deference) on whether a party was engaged in debt

---

must come *before* discovery, not the other way around"); *see also Iqbal*, 556 U.S. at 678-79 ("[Fed. R. Civ. P.] 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

collection.  *Id.* at 101 n.12.  The *Vincent* case is distinguishable, however, because, as HUD

asserts, that case involved a FTC opinion, published in the Federal Register, whereas here

Plaintiffs are relying on a mere letter from HUD to individuals.  Moreover, that a court may

choose to accord some deference to a well-reasoned informal agency opinion hardly means that

other sorts of informal statements of an agency are somehow transformed into legally

enforceable mandates.  A document such as the HUD letter here cannot fairly be read to create a

legal obligation that may be enforced via the APA.  Indeed, were this Court to interpret it as

such, it would discourage agencies from engaging in informal communication with interested

parties.

In sum, I do not find that HUD has a duty to make a determination as to whether utilities

may be considered "additional rent" under federal law or to investigate Plaintiffs' allegations at

issue in the Second Amended Complaint.[18]  For this reason, Plaintiffs' claims against HUD

under the APA are dismissed.[19]

## IV.  CLAIMS AGAINST COMMISSIONER TOWNS

A.  *Rooker-Feldman* Doctrine

Commissioner Towns contends that this Court lacks subject matter jurisdiction over

Plaintiffs' claims against him pursuant to the *Rooker-Feldman* doctrine, (*see* Towns's Mem. 9-

---

[18] That said, I understand Plaintiffs' frustration that HUD is not preventing HCR from requiring a lease that, in Plaintiffs' view, allows them to be evicted in circumstances where, they believe, they are being charged more for electricity than they should be.  HUD has not, in this litigation, come out and explained why Plaintiffs are wrong, although I recognize that it was under no obligation to do so at this stage of the case.  I would hope, however, that even though HUD review or explanation of the matter cannot be compelled via the APA, HUD would choose to satisfy itself that Landlord and HCR are properly administering Plaintiffs' leases, and explain its reasoning to Plaintiffs, to the extent it has not already done so.

[19] Because I find that HUD's actions (or inactions) are not subject to review under the APA, I need not address HUD's alternative argument that Plaintiffs' claims should be dismissed because Plaintiffs' have an adequate alternative legal remedy by seeking relief from Commissioner Towns. (*See* HUD's Mem. 10-12.)  I note, however, that for reasons explained below, Plaintiffs' claims against Commissioner Towns are dismissed.

15),[20] which bars lower federal courts from reviewing judgments of state courts.  *See generally*

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413

(1923).  This doctrine recognizes that "federal district courts lack jurisdiction over suits that are,

in substance, appeals from state-court judgments."  *Hoblock v. Albany Cnty. Bd. of Elections*,

422 F.3d 77, 84 (2d Cir. 2005).  "Underlying the *Rooker-Feldman* doctrine is the principle,

expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the

Supreme Court may review state-court decisions."  *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir.

2009) (quoting *Hoblock*, 422 F.3d at 85).  In 2005, the Supreme Court narrowed the previously

held view of this carve-out of the district courts' subject matter jurisdiction, holding that it "is

confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-

court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those

judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005); *see Green*, 585

F.3d at 101 (recognizing that *Exxon Mobil* narrowed the Second Circuit's previously expansive

interpretation of the *Rooker-Feldman* doctrine).

The Second Circuit thereafter identified four requirements that must be met for *Rooker-*

*Feldman* to divest a district court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court.  Second, the
> plaintiff must complain of injuries caused by a state-court judgment.  Third,
> the plaintiff must invite district court review and rejection of that judgment.
> Fourth, the state-court judgment must have been rendered before the district
> court proceedings commenced.

---

[20] "Towns's Mem." refers to Defendant Darryl C. Towns's Memorandum of Law in Support of his Motion to
Dismiss the Second Amended Complaint.  (Doc. 36.)

*Hoblock*, 422 F.3d at 85 (internal quotation marks, footnote, and alterations omitted).  The first and fourth requirements are "procedural," while the second and third are "substantive"; the requirement that the plaintiff "*complain of an injury* caused by a state judgment . . . is the core requirement from which the others derive."  *Id.* at 85, 87 (emphasis in original).  If all four requirements are met, the case must be dismissed.

      1.  Procedural Requirements

Plaintiffs seem to concede, and I agree, that the procedural requirements of the *Rooker-Feldman* doctrine are met in this case.  Plaintiffs Thompson, Guerrero and Romero, who were part of the consolidated *Roberts* case, "lost" on summary judgment in the Yonkers City Court when the Court upheld Landlord's right to evict the tenants for non-payment of submetered electricity as "additional rent."  (*See* SAC ¶ 14; *see also* Yonkers City Court Decision.) Plaintiffs appealed to the New York Supreme Court, Appellate Term, but withdrew their appeals and entered into a settlement with the Landlord.  (*See* SAC ¶¶ 156, 231, 273; *see also* Berg Decl. Exs. 12, 13.)  Plaintiffs Hernandez, Sparaci, Thiam and Poku were not part of the *Roberts* case, but the Landlord filed summary eviction proceedings against them for the non-payment of electric utility charges due as additional rent under the Lease, and each Plaintiff entered into a stipulation of settlement with the Landlord, by which they agreed to a final judgment and to make future electricity and rent payments.  (*See* SAC ¶¶ 178, 206; Berg. Decl. Exs. 19, 20.). These settlements are sufficient "final judgments for the purpose of the *Rooker-Feldman* doctrine."  *Green v. City of New York*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006) (citation omitted); *see Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009) ("[B]ecause plaintiffs now seek to effectively set aside the judgment authorizing the warrant of eviction, based upon the stipulation of settlement, on the basis that such violated plaintiffs' rights, the

Court deems plaintiffs a losing party in a state court action for purposes of this procedural requirement of *Rooker-Feldman*."); *Delgado v. Chan*, No. 97-CV-2251, 1997 WL 527876, at *4 (S.D.N.Y. Aug. 22, 1997) (judgment of possession was final judgment notwithstanding that it "was entered pursuant to a stipulation of settlement.").  Further, the Yonkers City Court decision and the *Roberts* Plaintiffs' withdrawal of their appeal pursuant to settlement, along with the various stipulations of settlement entered into by the other Plaintiffs, all predated the initiation of this lawsuit on May 3, 2013.  (*See, e.g.*, Compl. (Doc. 1) (filed 5/3/13); SAC at ¶ 206 (Hernandez settlement dated 2/25/13); *id.* ¶ 178 (Sparaci settlement dated 4/5/13); *id.* Ex. G (Yonkers City Court decision dated 6/11/12); Berg Decl. Ex. 13 (*Roberts* settlement dated 11/15/12); *id.* Ex. 19 (Thiam settlement dated 10/21/12); *id.* Ex. 20 (Poku settlement dated 1/10/12).)

> 2.  Substantive Requirements

I also conclude that both substantive *Rooker-Feldman* requirements are met in this case. First, Plaintiffs are "complain[ing] of an injury caused by a state judgment."  *Hoblock*, 422 F.3d at 87 (emphasis omitted).  This causal requirement is satisfied "where, as in *Feldman*, the state court itself is the decision-maker whose action produces the injury."  *Sindone v. Kelly*, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006).  "*Exxon Mobil* and *Hoblock* [ ] make clear [ ] that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."  *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (emphasis in original).  For example, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court

existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *Id.* at 98 (emphasis omitted).  Additionally, a plaintiff's injuries are not caused by the judgment when the state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party.  *Hoblock*, 422 F.3d at 88.

Here Plaintiffs attempt to challenge the decision, reached by the Yonkers City Court, that Landlord could evict Plaintiffs based on a failure to pay "additional rent" in the form of electricity charges.  This challenge fits within the long line of cases holding that federal claims arising from eviction proceedings are ordinarily barred by the *Rooker-Feldman* doctrine.  *See, e.g.*, *Bush v. Danziger*, No. 06-CV-5529, 2006 WL 3019572 (S.D.N.Y. Oct. 23, 2006) (applying *Rooker-Feldman* to dismiss claim against judge and officials arising from eviction proceeding); *Kaplan v. Garfield First Assocs.*, *LLC*, No. 11-CV-4631, 2011 WL 4530025 (E.D.N.Y. Sept. 27, 2011) (applying *Rooker-Feldman* to dismiss claim that eviction proceeding violated certain procedural safeguards); *see also Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (affirming *Rooker-Feldman* dismissal where "complaint arises out of a landlord-tenant dispute over which the federal courts simply have no jurisdiction"); *Zion Tsabbar D.D.S. v. Madden*, No. 07-CV-4923, 2007 WL 4300115 (E.D.N.Y. Dec. 5, 2007) (applying *Rooker-Feldman* to dismiss claim that eviction proceeding violated Plaintiff's constitutional and state law rights), *aff'd sub nom. Tsabbar v. Madden*, 326 F. App'x 61 (2d Cir. 2009) (summary order).

Plaintiffs respond that Towns "misconstrues" the SAC and that the injury they complain of is not the Yonkers City Court decision, but the HCR Lease itself.  (*See* Ps' Opp. 15-16.) Plaintiffs add that they have not alleged that the Yonkers City Court decision injured them, but instead "seek nullification of the HCR lease because *its use* injured them."  (*See id.*)  But I cannot accept Plaintiffs' representation because, as Towns argues, (*see* Towns's Reply Mem.

5),[21] "the gravamen" of the SAC is that "Plaintiffs "have all faced eviction from Riverview" for "nonpayment of . . . electrical utility arrears," (*see* SAC ¶¶ 8, 11). Plaintiffs make a myriad of references to their "evictions" in the SAC, (*see, e.g.*, *id.* ¶ 2 ("Plaintiffs are subject to eviction from their homes . . . ."); *id.* ¶ 13 ("HCR has delegated its responsibility to Yonkers City Court to determine whether Plaintiffs . . . can be evicted for not paying the electricity bills . . . ."); *id.* ¶ 14 ("The local city court . . . has repeatedly upheld the landlord's unqualified right to evict tenants . . . ."),), and thus it appears, despite Plaintiffs' protestations otherwise, that they are claiming injury from the City Court judgment or stipulations of settlement.[22] Indeed, the denomination of the electricity bills as "additional rent" (*i.e.*, the "use" of the HCR Lease), has no day-to-day effect; it only injures Plaintiffs when a court allows their landlord to use it as a basis for eviction. While Plaintiffs may dispute the amount they are charged for utilities, the only significance to that amount being charged as "additional rent" (as opposed to a separate utility fee) arises when the City Court orders their eviction because of their failure to pay it. Thus, Plaintiffs plainly allege injuries stemming from the City Court judgments.

Plaintiffs further argue that the *Rooker-Feldman* doctrine does not preclude relief because Plaintiffs' monetary injuries – the excessive "rent" for utility payments – existed before they were evicted by Yonkers City Court, and thus their injuries were not caused the Court decision. (*See* Doc. 45.)[23] In support, Plaintiffs refer to two cases, *Anctil v. Ally Fin. Inc.*, 998 F. Supp. 2d

---

[21] "Towns's Reply Mem." refers to Defendant Darryl C. Towns's Reply Memorandum of Law in Support of his Motion to Dismiss the Second Amended Complaint. (Doc. 40.)

[22] I agree with Towns that Plaintiffs' memorandum of law confirms that their injury stems from the City Court decision, not the HCR Lease. (*See* Town's Reply Mem. 5.) For example, Plaintiffs, in arguing that Thompson has standing to bring her claims against Towns, assert that Thompson's injury is the money judgment entered against her by the Yonkers City Court. (*See* Ps' Opp. 25.) On a related note, I agree that Thompson lacks standing, for the reasons articulated by Defendant Towns.

[23] Plaintiffs raise this argument in an unauthorized sur-reply, which I ordinarily do not consider. I will address Plaintiffs' arguments, however, because Towns responded to Plaintiffs' submission.

127 (S.D.N.Y. 2014), and *Schweitzer v. Crofton*, 560 F. App'x 6 (2d Cir. 2014) (summary

order), and argue that the instant case is distinguishable from *Anctil*, where I found that the

*Rooker-Feldman* doctrine applied to bar plaintiffs from challenging the loss of their homes in

state court foreclosure proceedings, 998 F. Supp. 2d at 136-37, and akin to *Schweitzer*, where the

Second Circuit rejected application of the *Rooker-Feldman* doctrine because the challenged

action – the removal of a minor child from the emergency room – preceded any state court

involvement, 560 F. App'x at 9.  Towns responds that the converse is true.  (*See* Doc. 44.)  I

agree with Towns.  Plaintiffs here complain of the outcome of a state court proceeding – their

eviction or settlement – just as the plaintiffs in *Anctil* complained of their foreclosure in state

court.  This is unlike the plaintiffs in *Schweitzer*, who, the Second Circuit noted, challenged none

of the court's orders, but instead challenged the removal of a minor child from the emergency

room.  *See* 560 F. App'x at 9.  While Plaintiffs take issue with the terms of the HCR Lease, the

issue they raise in this Court is how that lease led to the eviction proceedings; as noted earlier,

that is the only respect in which the disputed lease term injured them.  So I cannot separate any

challenge to the Lease from the challenge to the eviction proceedings, and thus the claim is

barred under the *Rooker-Feldman* doctrine.

Second, Plaintiffs "invite district court review and rejection" of the state court judgments.

*Hoblock*, 422 F.3d at 85 (alteration omitted).  A decision in Plaintiffs' favor would necessarily

involve reversal of the Yonkers City Court judgment that the Landlord could evict Plaintiffs for

non-payment of electricity charges as additional rent.  This is equally true for Plaintiffs' request

that the Court enjoin any future evictions of Plaintiffs or other tenants in Riverview based on a

failure to pay "additional rent" in the form of electricity charges.  *See Kristopher v. Stone St.*

*Properties, LLC*, No. 13-CV-566, 2013 WL 499752, at *3 (S.D.N.Y. Jan. 29, 2013) (applying

*Rooker-Feldman* to dismiss Plaintiff's request that the Court "enjoin Defendants from proceeding with any further attempt to evict Plaintiff" because such relief would require the court to determine "whether the housing court erred in issuing a warrant for [P]laintiff's eviction"); *Trang v. Concris Realty Co.*, No. 05-CV-5441, 2005 WL 1398004, at *2 (E.D.N.Y. June 14, 2005) (applying *Rooker-Feldman* because "review of plaintiff's claims would necessitate a review of the housing court's eviction order").

      Plaintiffs respond that the Yonkers City Court never adjudicated whether the HCR lease violates federal law because it "must and does issue a judgment for nonpayment of 'additional rent' as long as there is an additional rent clause that is not *expressly* prohibited," and cannot determine whether the lease violated federal law. (*See* Ps' Opp. 16.)  In other words, Plaintiffs argue that the Yonkers City Court's hands were tied and that it never addressed (and could not address) whether treating electricity payments as "additional rent" was permitted under federal law – the determination they seek here.  But Plaintiffs overlook that they asked the Yonkers City Court to decide exactly that, and that the Court did in fact decide that counting electricity charges as "additional rent" under the Lease did not violate federal law.  (*See* Yonkers City Court Decision at 4-5.)  That Court never indicated that it was allowing eviction because of the absence of an express prohibition.  (*See generally id.*)  That Plaintiffs disapprove of *how* the Court reached that decision does not undermine the fact that the issue was addressed and decided. And, in any event, that the City Court gave deference to HUD, PSC and HCR determinations does not amount to a complete abdication of its responsibility to rule on the question before it, and thus I reject Plaintiffs' argument that the City Court decision did not address the present issue.

Plaintiffs further argue that the City Court lacks the authority to overturn determinations by federal agencies and thus the Yonkers Court did not decide that electricity charges could be collected as additional rent.  But none of the cases that Plaintiffs cite on this point are persuasive. Rather, as Commissioner Towns points out, state courts routinely consider challenges to residential lease terms based on federal law.  *See, e.g.*, *Livecchi v. Pyatt*, No. 02-CV-9073, 2003 WL 21246096, at *8 (N.Y. City Civ. Ct. May 15, 2003) (plaintiff was not legally entitled to collect more than the Section 8 tenant's portion of the rent from defendant); *Urban Horizons Tax Credit Fund, L.P. v. Zarick,* 761 N.Y.S.2d 795, 797-98 (N.Y. City Civ. Ct. 2003) (court assessed validity of lease clause barring placement of satellite dishes on exterior of apartment, which involved analysis of federal law and regulations).  This is precisely what the Yonkers Court did when it determined that Landlord could evict Plaintiffs based on a failure to pay electricity charges, which it found could properly be considered "additional rent" under federal law and the HCR Lease.  (*See* Yonkers City Court Decision.)

In sum, I find that the *Rooker-Feldman* doctrine's two substantive requirements are met in this case.  Plaintiffs complain of injuries by state court judgments and invite review and rejection of those judgments by asking the Court to enjoin any future evictions and declare that the HCR lease violates federal law.[24]

---

[24] Because I find the *Rooker-Feldman* doctrine prevents this Court from exercising subject matter jurisdiction over Plaintiffs' claims against Commissioner Towns, I need not consider Towns's alternative arguments that Plaintiffs' claims are barred by the doctrines of res judicata or collateral estoppel, or that Plaintiffs have failed to state a plausible claim for relief.  In my view, however, *res judicata* also bars Plaintiffs' claims.  For the reasons articulated by Defendant Towns, all Plaintiffs either raised in the Yonkers City Court the alleged invalidity of the "additional rent" clause under federal law, or could have.  Finally, I note that Commissioner Towns originally argued that the Court should abstain from ruling on Plaintiffs' claims, (*see* Towns's Mem. 21-23; Towns's Reply Mem. 8), but withdrew that argument in light of the Supreme Court's recent decision in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), (*see* Doc. 49).  I therefore need not address Towns's argument relating to the doctrine of abstention.

## V.  **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have amended their complaint twice.  At a pre-motion conference held before the Court on July 9, 2013, the Court and the parties discussed various deficiencies in the First Amended Complaint, many of which were mentioned in Defendants' various pre-motion letters. (*See* Minute Entry of July 9, 2013; Docs. 14, 17.)  Plaintiffs were given an opportunity to file the SAC in response to the potential deficiencies discussed.  Plaintiffs' failure to fix deficiencies in their previous pleadings, after being provided notice of the deficiencies, is alone sufficient ground to deny leave to amend.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the

deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend").  Further, Plaintiffs have not requested leave to file a Third Amended Complaint or suggested that they are in possession of facts that would overcome the jurisdictional bars to this Court's consideration of Plaintiffs' claims.  A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Accordingly, I decline to grant Plaintiffs leave to amend *sua sponte*.

## VI.   CONCLUSION

For the reasons stated above, the Motions to Dismiss are GRANTED.  The Second Amended Complaint is DISMISSED for lack of subject matter jurisdiction.  The Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 33, 35), and close the case.

**SO ORDERED.**

Dated: October 14, 2014
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J